FRANCES CARROLL BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 66013. Filed June 30, 1958.

*George D. Hubbard, Esq.*, for the petitioner.
*Charles P. Dugan, Esq.*, for the respondent.

The Commissioner determined a deficiency in gift tax for the year 1953 in the amount of $4,141.34. The deficiency is based on two adjustments, only one of which is in issue. The adjustment in issue is the respondent's disallowance of four $3,000 exclusions claimed for certain transfers in trust on the ground that the transfers were of future interests within the meaning of section 1003 (b), I. R. C. 1939.[1]

### FINDINGS OF FACT.

A stipulation of facts has been filed and is incorporated herein by this reference.

Frances Carroll Brown, petitioner, of Roseland, New Jersey, filed a gift tax return for the year 1953 with the district director of internal revenue, Baltimore, Maryland.

Petitioner, on November 17, 1953, pursuant to an indenture of trust dated the same day, between petitioner, as settlor, and Ambler H. Moss and Mercantile-Safe Deposit and Trust Company (hereinafter referred to as Mercantile), as trustees, both of Baltimore, irrevocably transferred, without consideration, to the trustees the following securities, hereinafter called the trust estate:

| Name of stock | Number of shares | Type of stock |
|---|---|---|
| American Telephone & Telegraph Co | 400 | Common |
| Atchison, Topeka & Santa Fe Railroad Co | 400 | Common |
| Mid-Continent Petroleum Corp | 300 | Common |
| Standard Oil Company of Calif | 300 | Common |
| Standard Oil Company of N. J | 300 | Common |
| Union Pacific Railroad Co | 200 | Common |

[1] All section references are to the Internal Revenue Code of 1939, as amended.

The indenture of trust provided the trustees shall hold the trust estate for the uses and purposes, subject to the terms and conditions and with the powers hereinafter stated:

FIRST: [To pay over in monthly installments, as nearly equal as may be practicable, one-third of the net income from the trust estate to Helene Mavro, during her lifetime; one-third to Deborah Zimmerman, during her lifetime; and one-third to Stuart Paul and Isobel Margaret Garver,[2] jointly, during their joint lives, and to the survivor of them during the lifetime of the survivor. Upon the death of any of the named beneficiaries, the trustees were directed to pay his share of the net income to petitioner's father, H. Carroll Brown, for life, whereupon, or in the event of his prior decease, the trustees were directed to pay the shares of the net income to Providence Bible Institute, Providence, Rhode Island. Upon the death of the last surviving individual beneficiary, the trustees were directed to pay over the corpus of the trust to Providence Bible Institute.]

SECOND: * * *

(a) The Trustees shall have all powers necessary and proper for the management of the properties comprising the trusts, * * *

(b) The Trustees shall have full power: to postpone until such time as they, in their absolute and unqualified discretion shall deem expedient, the sale of any part of the real or personal estate which the Trustees may receive under or by virtue of this Indenture of Trust, irrespective of the number or size of the investments involved or of their character and without regard to diversification of investments, without liability for any loss or damage occasioned by such retention; to invest and reinvest, irrespective of the number or size of the investments involved and without regard to diversification of investments, the principal of the trusts or any part thereof, or the proceeds of any sales or other dispositions of the trust properties in such securities and other property, real, leasehold (improved or unimproved) or personal, as they may deem to be to the best interests of the trusts, * * *

(c) The Trustees shall not be required to create a sinking fund from income or otherwise make good to the principal any loss on securities or other property purchased when the original cost thereof is lost, in whole or in part, through sale or otherwise, or to retire or absorb the premiums at which any securities may have been purchased, but may, in their discretion, allocate income or accumulated income to principal for such purposes, nor shall the Trustees be obligated to credit to income profits from sales or other disposition of assets.

(d) All payments provided to be made under the trusts shall be of the net amount or property payable after the payment of all taxes and costs of administration of the trusts, * * *

(e) Except as in this instrument otherwise provided, all payments of corpus, as well as income provided to be made hereunder to individuals, shall be made to the beneficiaries direct * * *

(f) Dividends, interest, rents and other similar payments, other than liquidating dividends, received in cash by the Trustees shall normally be dealt with as income, whether ordinary or extraordinary, and whether or not in the nature of dividends on mining stocks or other assets of a wasting nature (even though the corporation declaring such dividends may have designated the same as in whole or in part a return of capital or a distribution from depletion reserve), and whether or not the securities to which they relate shall have been purchased at a premium and irrespective of the character of the assets or account out of which they are paid or the time when they shall have accrued

---

[2] Hereinafter referred to as income beneficiaries.

or accumulated or shall have been earned, declared or made payable, but the Trustees are authorized, in their absolute discretion, to allocate the whole or any part of any such payment to principal, if they shall deem such action advisable for any reason.

(g) Dividends paid in, and rights to subscribe to, securities or other property, whether or not of the same corporation, and liquidating dividends received in cash, shall normally be dealt with as principal, but the Trustees are authorized, in their absolute discretion, to allocate the whole or any part of any such dividend or right to income, if they shall deem such action advisable for any reason.

\* \* \* \* \* \* \*

FIFTH: The trust hereby created shall be irrevocable. \* \* \* And the Settlor further understands and intends, and it is the intention of all the parties to the instrument, that this trust shall at all times be administered and governed as to its legal operation, effect, construction, administration and in all other respects in accordance with the laws of the State of Maryland. It is not the intention of the parties hereto that the trust hereby created shall be administered under the jurisdiction or supervision of a Court of Equity or any other Court, and it shall not be so administered unless it be deemed by the Trustees advisable that it be so administered.

At the time of the transfer in trust all of the income beneficiaries were over 21 years of age. Their dates of birth were as follows:

| | |
|---|---|
| Isobel Margaret Garver | Nov. 18, 1912 |
| Stuart Paul Garver | Dec. 21, 1908 |
| Deborah Zimmerman | Dec. 29, 1912 |
| Helene Mavro | 1899 |

Petitioner valued the securities transferred pursuant to the indenture of trust at $175,000 on her 1953 gift tax return. That was the only gift reported during the year and the return showed the following:

| | |
|---|---|
| (a) Total gifts of donor | $175,000.00 |
| \* \* \* \* \* \* \* | |
| (e) Total gifts for year | $175,000.00 |
| (f) Less total exclusions not exceeding $3,000 for each donee (except gifts of future interests) | 12,000.00 |
| (g) Total included amount of gifts for year | $163,000.00 |
| (h) Deductions \* \* \* | |
| (1) Charitable, public and similar gifts \* \* \* $77,423.51 | |
| \* \* \* \* \* \* \* | |
| (i) Total deductions \* \* \* | $77,423.51 |
| (j) Amount of net gifts for year \* \* \* | $85,576.49 |

The $12,000 in exclusions claimed (line (f)) was for the gift to the income beneficiaries and was explained as follows:

Inasmuch as they are each entitled to receive income immediately, a $3,000.00 exclusion has been taken as to each as it is believed that the value of the

present as distinguished from the future interest is worth not less than $3,000.00 to each beneficiary. * * *

The Commissioner, in his notice of deficiency, adjusted net gifts by disallowing the $12,000 of claimed exclusions and explained the adjustment as follows:

No exclusions are allowed for the transfers made in trust since they are gifts of future interests within the meaning of Section 1003 (b) of the Internal Revenue Code of 1939.

The interest received by each income beneficiary under the indenture of trust was a present interest with a value in excess of $3,000.

The corpus of the trust created by petitioner on November 17, 1953, has at all times material hereto been invested in income-producing assets.

Since the inception of the trust, the trustees have distributed the income therefrom, after deducting the usual expenses of administration, to the four persons referred to in the trust indenture in the proportions described in paragraph First of the trust indenture in approximately equal monthly installments and year-end distributions of accumulated income.

The discretionary powers found in subparagraphs (c) and (f) of paragraph Second of the trust indenture were inserted therein in order to permit the trustees to exercise discretion in determining what is principal and what is income and thus to aid in the administration of the trust and to avoid the expense of equity proceedings.

OPINION.

BLACK, *Judge:* The only issue here relates to the disallowance of the four $3,000 exclusions. The respondent determined, and now contends, that the gifts to the income beneficiaries were gifts of "future interests" within the meaning of section 1003 (b) (3) and that, therefore, the petitioner is not entitled to the exclusions claimed under that section. Section 1003 (b) (3) provides that the first $3,000 of gifts (other than gifts of future interests) made to any person during the year shall not be included in the total amount of gifts for the year. The question is whether the gifts to the income beneficiaries are future interests, which are defined in Regulations 108, section 86.11, as interests "limited to commence in use, possession, or enjoyment at some future date or time." See *Commissioner* v. *Disston,* 325 U. S. 442, 446 (1945). Whether the gifts in question are of future interests as defined by Federal law, see *United States* v. *Pelzer,* 312 U. S. 399, 402–403 (1941), depends upon the rights of the beneficiaries under the indenture of trust as determined by Maryland law. *Helvering* v. *Stuart,* 317 U. S. 154, 161–162 (1942). And since the Maryland courts have not construed the trust instrument in question we must determine

its meaning under Maryland law as best we can. *Anthony J. Drexel Biddle, Jr.,* 11 T. C. 868, 872 (1948).

In Maryland, as elsewhere, the rights of the beneficiary are determined by the intention of the settlor as gleaned from the entire instrument. Paragraph First of the indenture of trust provides that the net income of the trust estate shall be paid in monthly installments to the income beneficiaries for their lives. There is no question but that that provision, standing alone, entitles the income beneficiaries to substantial present interests at the time the gift was made. Principal and Income (Uniform Act), Md. Ann. Code art. 75B (1951).

However, paragraph Second provides, *inter alia,* that:

(c) The Trustees shall not be required to create a sinking fund from income or otherwise make good to the principal any loss on securities or other property purchased when the original cost thereof is lost, in whole or in part, through sale or otherwise, or to retire or absorb the premiums at which any securities may have been purchased, but may, in their discretion, allocate income or accumulated income to principal for such purposes, nor shall the Trustees be obligated to credit to income profits from sales or other disposition of assets.

\* \* \* \* \* \* \*

(f) Dividends, interest, rents and other similar payments, other than liquidating dividends, received in cash by the Trustees shall normally be dealt with as income, whether ordinary or extraordinary, and whether or not in the nature of dividends on mining stocks or other assets of a wasting nature (even though the corporation declaring such dividends may have designated the same as in whole or in part a return of capital or a distribution from depletion reserve), and whether or not the securities to which they relate shall have been purchased at a premium and irrespective of the character of the assets or account out of which they are paid or the time when they shall have accrued or accumulated or shall have been earned, declared or made payable, but the Trustees are authorized, in their absolute discretion, to allocate the whole or any part of any such payment to principal, if they shall deem such action advisable for any reason.

Respondent contends that under these provisions of paragraph Second the trustees could allocate all of the receipts of, and accretions to, the trust estate to principal so that there would be no income for the income beneficiaries to receive and that their interest is contingent and therefore a "future interest." Petitioner, on the other hand, contends that the powers contained in the above-quoted provisions are administrative and managerial in character and could not, if properly exercised, result in a substantial diversion of the receipts of the trust from the income beneficiaries, and that the income beneficiaries could resort to a court of equity to prevent the improper exercise of the powers.

No Maryland cases have been cited and none have been found which were concerned with similar trust provisions. However, there have been several cases in other jurisdictions. The question has usually

been whether the settlor intended the trustee to have power to override local rules relating to the apportionment between principal and income of receipts of, and accretions to, the trust estate. Although the results have not been uniform, we have not found any case which has held that a trustee, as respondent here contends, has the power to treat all of the receipts and accretions as principal. The reason, we think, is obvious. In cases where the question of the trustee's power in this respect arises there is usually present a conflict between the interest of the life tenant and the remainderman. To hold that the trustee has the power under an "absolute discretion clause" to cut off all the rights of the life tenant would confer upon the trustee the power to destroy one of the primary purposes of the trust, i. e., the purpose to benefit the life tenant. An attempted destruction of one of the purposes of the trust would constitute an abuse of discretion which the courts would control. Here, the beneficiaries were life tenants and entitled to the income for life.

In *Doty* v. *Commissioner*, (C. A. 1, 1945) 148 F. 2d 503, affirming 3 T. C. 1013, the question was whether certain ordinary dividends of a trust were distributable to the income beneficiary. The trustee, under a clause in the trust giving him full power and authority to determine in all cases what accretions to the trust property should be considered as income and what as principal, all without regard to the general rule of law (Massachusetts law in this instance) on the subject, had allocated ordinary dividends to principal. The court held that "accretions to the trust property" did not cover receipts such as ordinary dividends. The court then said:

But even if we assume arguendo that the testatrix intended to give the trustee an absolute discretion in the allocation of trust receipts to corpus or to income, that discretion is not completely uncurbed. It must be exercised reasonably and in good faith in the interest of beneficiaries and remaindermen and must not be abused or exercised arbitrarily. *Mayberry* v. *Carey*, 268 Mass. 255, 167 N. E. 281; *Dumaine* v. *Dumaine, supra; Sears* v. *Childs*, 309 Mass. 337, 35 N. E. 2d 663. The action of the trustee here in classifying ordinary dividends as corpus deprives the beneficiary of all income from the trust. In the absence of most unusual circumstances—and none appear here—it seems clear that on the facts of this case equity would find such action on the part of the trustee arbitrary and an abuse of discretion.

In Maryland a trustee's discretionary power is subject to control of the courts to prevent an abuse of discretion. *Offut* v. *Offut*, 204 Md. 101, 102 A. 2d 554, 558 (1954). Restatement, Trusts, sec. 187, which was cited with approval by the court in *Offut* v. *Offut, supra*, states (comment *d*) that among the factors which may be relevant in determining whether a trustee is guilty of an abuse of discretion (in exercising or failing to exercise) are:

(2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; * * *

A careful reading of the whole indenture of trust indicates that the intention of the settlor was to give the income beneficiaries a substantial present interest and nowhere does it appear that she intended to favor the remainderman to their (income beneficiaries') detriment. It does not appear that the trustees' discretionary powers were granted for any other purpose than to facilitate the administration of the trust.[3] It seems clear to us that the income beneficiaries received a substantial present interest under the indenture of trust and that the trustees could not properly exercise their powers in such a manner as to deprive the income beneficiaries of their present interest. To do so would constitute an abuse of discretion which the Maryland courts would prevent.

Respondent also contends that if the interests in question are present interests the exclusions are nevertheless unallowable because the trustees were not required to pay over a definitely ascertainable amount of income thereby rendering the interests incapable of valuation.

We think respondent's contention is without merit. His contention in this respect is based on precisely the same argument that was advanced in support of his contention that the interests were future interests, viz, that the trustees could allocate all of the receipts and accretions of the trust estate to principal. As we have stated previously, the trustees could do no such thing without violating their trust. Therefore, the interests of the income beneficiaries which are concededly otherwise capable of valuation are not rendered incapable of valuation by the trustees' power under subparagraphs (c) and (f) of paragraph Second.

Accordingly, the petitioner is entitled to the four $3,000 exclusions which she claims. Because of the respondent's adjustment in the amount of the charitable deduction, which is not contested,

*Decision will be entered under Rule 50.*

---

[3] The trust officer of Mercantile, which administers numerous trusts and which was the corporate trustee of the trust to which petitioner conveyed the property here involved, testified that similar clauses are contained in about 90 per cent of the trusts which Mercantile administers and that Mercantile usually requests such clauses so as to facilitate administration and avoid litigation on doubtful items. He also testified that since the inception of the trust the income beneficiaries have received substantially all of the receipts of the trust estate. In the course of the testimony of this trust officer of Mercantile, the following question and answer appear:

Q. What is the purpose of inserting powers of this nature in the trust instrument?
A. So that as and when some unusual distribution is received by the trustee it would not be necessary to go into equity for instructions, that we have some area in which we can operate under our discretion to determine what is principal and what is income; not to withhold income but to determine what part of the distribution represents income and what part represents principal.