CHERLYN C. CALDWELL MARTINEZ, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7586–74.   Filed October 19, 1976.

*Charles A. Pinney, Jr.,* for the petitioner.
*William K. Shipley* and *Allen R. Herson,* for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency in petitioner's gift tax for the calendar year 1969 in the amount of $15,609.67. The principal issue for our determination is whether, in two trusts established by petitioner, the administrative powers granted the trustee cause the interest retained by petitioner and the interest created in the beneficiary to be not susceptible of measurement on the basis of generally accepted valuation principles.

## FINDINGS OF FACT

This case was submitted under Rule 122, hence all of the facts have been stipulated and are so found.

Petitioner Cherlyn C. Caldwell Martinez was a legal resident of Bonita, Calif., at the time her petition was filed. She filed her United States gift tax return for the calendar year 1969 with the Office of the Internal Revenue Service, International Operations Division, Washington, D.C.

On April 1, 1969, petitioner and Courtney Coleman Caldwell executed an irrevocable declaration of trust whereby cash in the amount of $80,000 was transferred from petitioner to Courtney Coleman Caldwell as trustee for the benefit of Eleanor J. Caldwell, mother of petitioner. Petitioner, on the same date, also executed an irrevocable declaration of trust, transferring $80,000 for the benefit of her father, Conrad C. Caldwell. Both trust instruments executed by petitioner contain identical terms and provisions except for the identity of the beneficiaries. Hereinafter, the singular shall be used to refer to both trusts.

Article I of the trust reads in pertinent part as follows:

### ARTICLE I
#### *Distribution of Income and Principal*

1. The Trustee shall distribute to or apply for the benefit of the said beneficiary all of the net income annually, or in such convenient periodic installments during the year as the Trustee deems advisable, but in any event all of the income shall be distributed annually.

2. The Trustee shall pay such income to the said beneficiary, as set forth in [paragraph] 1 above, during the lifetime of the said beneficiary, and upon the death of the said beneficiary, this trust shall terminate and all of the trust estate and any undistributed net income thereon remaining shall revert to and be forthwith distributed to the Trustor. In the event the said Trustor shall predecease the said beneficiary, then the trust estate remaining upon the death of the said beneficiary shall be distributed to the issue of the Trustor by right of representation, and in the event the said Trustor leaves no issue then surviving, such property shall be distributed to the brothers of the said Trustor, to wit, CONRAD CHESTNUT CALDWELL, JR. and CLIFFORD CAMERON CALDWELL, or if they predecease the said beneficiary, then to their issue by right of representation.

3. The Trustee shall not distribute any principal of the trust estate to the beneficiary at any time.

The relevant administrative and management powers conferred upon the trustee are provided in Articles III and V of the trust agreement, as follows:

## ARTICLE III
### Powers of the Trustee

To carry out the purposes of this trust, and subject to any limitations stated elsewhere herein, the Trustee is vested with the following powers in addition to those now or hereafter conferred by law affecting the trust and the trust estate:

(1) To continue to hold any property, although not of a type or quality nor constituting a diversification considered proper for trust investments, including the Trustee's own stock, and to operate at the risk of the trust estate and not at the risk of the Trustee, any property or business received in this trust, as long as it may deem advisable, the profits and losses therefrom to inure or be chargeable to the trust estate as a whole and not to the Trustee.

(2) To invest and reinvest the principal and income if the Trustee is directed to accumulate it, and to purchase or acquire therewith every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, participation in any common trust fund, corporate obligations of every kind, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire for their own account.

(3) To manage, control, sell, convey, exchange, partition, divide, subdivide, improve, repair; to grant options and to sell upon deferred payments; to lease for terms within or extending beyond the duration of this trust for any purpose; to create restrictions, easements and other servitudes.

(4) To advance funds to this trust for any trust purpose, such advances with interest at current rates to be a first lien on and to be repaid out of the principal or income; to reimburse himself from principal or income for any loss or expense incurred by reason of its ownership or holding of any property in this trust,

\* \* \*

(6) To borrow money for any trust purpose upon such terms and conditions as the Trustee may deem proper; and to obligate the trust estate for repayment; to encumber the trust estate or any of its property by mortgage, deed of trust, pledge or otherwise, using such procedure to consummate the transaction as the Trustee may deem advisable.

(7) To make payments to any beneficiary under disability by making them to the guardian of the person of the beneficiary, if a minor, or may apply them for the beneficiary's benefit. Sums necessary for support and education may be paid directly to the minor beneficiary who, in the judgment of the Trustee, has attained sufficient age and discretion to render it probable that the moneys will be properly expended.

\* \* \*

(11) To budget the estimated annual income and expenses of the trust in such manner as to equalize, as far as practicable, periodic income payments to the beneficiary.

(12) To determine what is principal, gross income or net distributable income and to charge the premium of any security purchased at a premium either against income or principal, or partly against income and partly against principal, as may be deemed best by the Trustee in its discretion.

Unless specifically limited, all discretions conferred upon the Trustee shall be absolute, and their exercise conclusive on all persons interested in this trust. The enumeration of certain powers of the Trustee shall not limit his general powers, the Trustee being vested with and having all the rights, powers and privileges which an absolute owner of the same property would have.

\* \* \*

### ARTICLE V
#### *Miscellaneous Provisions*

1. The Trustee shall pay out of principal or income as it may elect, or partly out of each in such shares as it may determine, property taxes, assessments, charges, attorney's fees, the Trustee's compensation, and other expenses incurred in the administration or protection of this trust. The discretion of the Trustee to pay these items from income or principal, or partly from each, may be exercised not only in the interest of the trust estate but for the benefit of any beneficiary. The income remaining after such expenditures as the Trustee shall elect to pay therefrom shall constitute net income.

The trust expressly provides that the laws of the State of California shall govern its validity, construction, and operation. Beneath the acceptance clause, executed and subscribed to by the trustee, petitioner certified and approved the terms and conditions of the trust.

I certify that I have read the foregoing Declaration of Trust and that it correctly states the terms and conditions under which the trust estate is to be held, managed and disposed of by the Trustee. I approve the Declaration of Trust in all particulars and request the Trustee to execute it.

Dated: April 1, 1969.

(S) Cherlyn Carol Caldwell
CHERLYN CAROL CALDWELL
*Trustor*

Petitioner timely filed a United States gift tax return (Form 709) for the calendar year 1969, attaching a schedule thereto detailing calculation of the gift tax as follows:

Calculation of the Gift Tax Due by Cherlyn C. Caldwell Martinez on Two Trusts Formed During the Year 1969 in the Total Amount of $160,000, $80,000 Each

| | |
|---|---:|
| Cherlyn C. Caldwell trust No. 1 (EJC) | $80,000.00 |
| Less ½ of specific exemption | 15,000.00 |
| | 65,000.00 |
| Less exclusion for the year | 3,000.00 |
| | 62,000.00 |
| The beneficiary, Eleanor J. Caldwell is 49 years old— | |
| quotient 53.141% ..................taxable | 32,947.42 |
| Cherlyn C. Caldwell trust No. 2 (CCC) | 80,000.00 |
| Less ½ of specific exemption | 15,000.00 |
| | 65,000.00 |
| The beneficiary, Conrad C. Caldwell is 60 years old— | |
| quotient 39.679% ..................taxable | 24,600.98 |
| Calculation of tax on form 709 Federal: | |
| Taxable amount on trust No. 1 (EJC) | 32,947.42 |
| Taxable amount on trust No. 2 (CCC) | 24,600.98 |
| Total subject to gift tax | 57,548.40 |
| Tax on..................$50,000.00 | 5,250.00 |
| Tax on..................7,548.40 | 1,415.33 |
| Total gift tax due for the year 1969 | [1]6,665.33 |

In his notice of deficiency, respondent disallowed the $3,000-per-donee annual exclusion permitted by section 2503(b) of the Internal Revenue Code of 1954 and made no allowance for the reversionary interest retained by petitioner when making the gifts. Respondent's explanation of the adjustment is that petitioner's retained interest and the interest of the beneficiary are not capable of being accurately valued because of the broad and absolute discretionary administrative powers granted the trustee.

## OPINION

When a donor transfers property into trust and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest. Sec. 25.2512–5(a)(1), Gift Tax Regs. However, if the value of the possibility of reverter is unascertainable, then the donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles (recog-

---

[1] Both petitioner and respondent agree, even if the valuations used by petitioner are correct, the tax was computed incorrectly by taking the specific exemption and the annual exclusion at the wrong stage of the gift tax computation. Additionally, petitioner's computation accounted for the annual exclusion under trust number 2, however such amount was not reflected in the schedule.

nized actuarial methods) and the entire gift is complete and subject to the gift tax. Sec. 25.2511–1(e), Gift Tax Regs.

Section 2503(b) permits an annual donee exclusion of the first $3,000 of gifts to any one person during a calendar year provided (1) the gift is one of a present interest, and (2) is one, here again, susceptible of valuation. Sec. 25.2503, Gift Tax Regs.

Both sides agree that the question to be determined by this Court is whether the reversionary interest of petitioner and the present interest created in the income beneficiary are susceptible of measurement.[2] Under both gift tax provisions the burden of proof is on the donor to show the interests have ascertainable values. *Robinette v. Helvering,* 318 U.S. 184 (1943); *Commissioner v. Disston,* 325 U.S. 442 (1945). Respondent argues that petitioner has failed on both accounts to meet her burden of proof in establishing values for the respective interests and therefore urges that reliance upon actuarial standards is inappropriate.

Respondent on brief analogizes the issue at hand to a section 2055(a) charitable remainder in trust deduction case. This Court has previously stated that there is no logical distinction between cases involving gifts and those involving deduction of charitable bequests since the question in both is whether values can be ascertained. *William H. Robertson,* 26 T.C. 246, 250 (1956); *Andrew Geller,* 9 T.C. 484, 495 (1947). More specifically, the charitable bequest area includes section 2055 only insofar as the remainder interest, in trust, is presently ascertainable. Sec. 20.2055–2(a), Gift Tax Regs.[3] The courts have been continually confronted with the question of the extent to which administrative powers conferred upon a trustee operate to preclude deductibility under section 2055(a)(2) of an otherwise undisputed value of an interest. *Estate of George I. Speer,* 57 T.C. 804, 806 (1972), and the cases cited therein. Therefore, we approach the solution to the

---

[2] Respondent concedes on brief that the values of petitioner's retained interest and the life income interest are not zero but in fact have some value. Furthermore, respondent states that the income interest is a present interest. Respondent bases his disallowance on the ground that the powers granted petitioner's trustee render the interests unascertainable.

[3] See sec. 20.2055(e), Gift Tax Regs., which modifies the rule in the cases of decedents dying after Dec. 31, 1969.

problem of the instant case by considering the standards and principles set forth in the charitable deduction as well as the relevant gift tax cases.

At the outset we must seek to determine the donor's intent in establishing the irrevocable trust. This case was submitted under a complete stipulation of facts, and hence we are limited to an examination of the declaration of trust itself to ascertain that intent.

The obvious first place to look to ascertain what degree of interest the "trustor" desired the beneficiary to have is the article describing the nature of the income interest. Article I of the declaration in issue contains that description and seems to make it clear that the "trustor" desired the beneficiary to have a lifetime interest in the income of the trust. Paragraph 1 of said article provides that the "Trustee shall distribute * * * all of the net income annually, * * * but in any event all of the income shall be distributed annually."

Paragraph 3 of the same article limits the beneficiary's interest by providing that "The Trustee shall not distribute any principal of the trust estate to the beneficiary at any time." There is no provision which would permit the trustee to accumulate the income. Looking, then, at Article I alone we would seem to be safe in concluding that the beneficiary had an ascertainable right to the trust income for his or her life.

But the respondent argues that the powers granted the trustee in Article III are such that the beneficiary's income interest is unpredictable. Article III contains 12 separate paragraphs which can be fairly described as a hodgepodge of powers selected from a variety of form books. Some of the powers are not even relevant to the trust at hand. For example, paragraph (1), relating to the types of property the trustee may hold, is obviously not drafted with an initial trust corpus of cash in mind. Paragraph (2) refers to the trustee's power to accumulate when, as noted, no such power in fact exists. Paragraph (7) deals with minor beneficiaries, a circumstance which cannot occur here where the beneficiaries are the parents of the trustor.

This case is a rather dramatic illustration of the difficulties draftsmen can get themselves into by a blind, careless reliance on forms. We agree with respondent that the Federal tax consequences cannot be determined by an inquiry into the

precision of the drafter. However, the trustee confronted with substantial liability under State law must carefully scrutinize the words used, ill-considered though they may be, in order to manage properly the trust estate and to determine the petitioner's dispositive intent.

Respondent seizes on paragraph (12), which authorizes the trustee "To determine what is principal, gross income or net distributable income," and couples that language with the concluding flush language of Article III, that "all discretions conferred upon the Trustee shall be absolute, and their exercise conclusive on all persons interested in this trust," as according the trustee such uncontrolled discretion of what may be distributed as income as to make such interest insusceptible of valuation.

While we find respondent's point far from frivolous, we prefer to resolve the matter on what we deem to be the trustor's intent as reflected in the dispositive article and not on the inartistic miscellany of trustee powers found in Article III. We believe that a California court would hold that the trustor, a lay person, would be more certain that her intent was being carried out by a careful review of the language dealing with the distribution of income as contrasted with a review given the litany of trustee powers.

Further, we agree with petitioner that California law in the instant case will control the trustee's discretion. Consequently we do not accept respondent's reading of local law to the effect that it prohibits judicial intervention, where the trustee is granted absolute authority, unless the trustee abdicates his trust duties or carries them out fraudulently.

In analyzing the powers of the trustee in allocating receipts and disbursements to the principal and income accounts, we note that Article V(1) gives the trustee discretion on the disbursement side. However, such discretion "may be exercised not only in the interest of the trust estate but for the benefit of any beneficiary. The income remaining after such expenditures * * * shall constitute net income." We believe this clause significant because it expresses petitioner's intentions in requiring her trustee to benefit neither the income nor reversionary interest to the other's detriment. As previously stated, it is clear that a trust purpose was to provide all net income to the designated beneficiary with no

accumulation of income. Such beneficiary had no rights to any principal. In fact, Article III(11) directs the trustee to budget estimated net income to provide for periodic income payments to the beneficiary.

Under California law,[4] "A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust." Further, Cal. Civ. Code sec. 730.02(b), provides:

> If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee has made an allocation contrary to a provision of this chapter.[5]

*In Estate of Ferrall,* 41 Cal. 2d 166, 176–177, 258 P.2d 1009, 1014–1015 (1953), the California Supreme Court stated:

> When we pass to the consideration of the duty of the trustees in the administration of the trust and their conduct in compliance therewith, there is no divergence of authority to the effect that the trust must be administered in accordance with the intentions of the settlor. The rule is well stated in Section 187, comment J, Restatement of Trusts, p. 488, as follows: "The extent of the discretion conferred upon the trustees depends primarily upon the manifestation of intention of the settlor. * * * The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment." Even though it is provided that the trustee shall have absolute or unlimited or uncontrolled discretion, the court may interpose if the trustee does not act "in a state of mind in which it was contemplated by the settlor that he would act." (comment j, p. 489.)

See also *Estate of Lackmann,* 156 Cal. App. 2d 674, 680, 320 P.2d 186 (1st Dist. Ct. App. 1958); *Estate of Miller,* 230 Cal. App. 2d 888, 41 Cal. Rptr. 410 (5th Dist. Ct. App. 1965); *Coberly v. Superior Court of Los Angeles,* 231 Cal. App. 2d 685, 42 Cal. Rptr. 64 (2d Dist. Ct. App. 1965).

Therefore, under California law a grant of absolute discretion given to a trustee to administer assets, does not mean he can do as he pleases but rather that the grantor has waived the requirement that the conduct of the trustee at all times satisfy the standard of judgment and care exercised by a

---

[4] Cal. Civ. Code sec. 2269, enacted in 1872.*

[5] Sec. 730, operative as of July 1, 1968, provides the statutory ground rules for allocating classes of receipts and disbursements to income and principal.

reasonable, prudent man. The trustee is still required to avoid arbitrary action, not to neglect his trust and to use his best judgment. He will be held to abuse his discretion by acting to cancel the intention of the donor or by defeating the purposes of the trust. In fact, it has been said that "if there be any doubt or uncertainty in the trust it will be construed, if possible, in favor of the beneficiary and against the trustee." *Estate of Greenleaf*, 101 Cal. App. 2d 658, 225 P.2d 945 (4th Dist. Ct. App. 1951).

Thus we concur with petitioner that California law will prevent an improper allocation of trust disbursements and receipts as an abuse of the trustee's discretion. Petitioner's reliance on *Francis Carroll Brown*, 30 T.C. 831 (1958), is well placed. Powers generally similar to those in the instant case were considered in *Francis Carroll Brown, supra. Brown* involved an interpretation of Maryland trust law. Respondent distinguishes *Brown* arguing that California law is to the contrary, that the case dealt only with the $3,000-per-donee exclusion, and that the issue was whether a present interest existed, not whether it was ascertainable. We think respondent's distinctions are without merit. In *Francis Carroll Brown, supra* at 836, we stated:

> In Maryland a trustee's discretionary power is subject to control of the courts to prevent an abuse of discretion. *Offut v. Offut,* 204 Md. 101, 102 A.2d 554, 558 (1954). Restatement, Trusts, sec. 187 which was cited with approval by the court in *Offut v. Offut, supra* * * *

Although we focused our attention on the present interest question, our opinion also dealt with the ascertainable value issue. Our conclusion in the instant case is precisely the same. As we stated in *Francis Carroll Brown, supra* at 836:

> To hold that the trustee has the power under an "absolute discretion clause" to cut off all the rights of the life tenant would confer upon the trustee the power to destroy one of the primary purposes of the trust, i.e., the purpose to benefit the life tenant. An attempted destruction of one of the purposes of the trust would constitute an abuse of discretion which courts would control.

Furthermore, we believe, under the circumstances of this case, that a finding of ascertainable value for the beneficiary's income interest results in the conclusion that the reversionary interest is capable of ascertainment. The converse is also true.

Respondent also argues that, under Article III(2), the trustee is empowered to invest the principal in any kind of property including property which would otherwise not be considered proper for trust investments. Art. III(1). Therefore, respondent continues, the trustee is empowered to purchase wasting assets, a decision which would have a drastic effect on the value of the donor's retained interest and the beneficiary's income interest.

Referring to Article III(2), the investment power provision is taken directly from the California Civil Code section 2261(1) "which men of prudence, discretion and intelligence acquire for their own account." Therefore, if and when the trustee invests the cash corpus in other property, the prudent man rule shall apply in limiting such trustee's investments. Under the facts herein, this prudent man standard will limit the Article III(1) powers. Therefore, we are satisfied that the California prudent man rule is sufficient in imparting an ascertainable standard and in subjecting to the control of the courts the investment powers held by the trustee. *Day v. First Trust & Savings Bank of Pasadena,* 47 Cal. App. 2d 470, 118 P. 2d 51 (2d Dist. Ct. App. 1941).

We are aware of the cases relied on by respondent. See *Estate of Lillie MacMunn Stewart,* 52 T.C. 830, revd. 436 F.2d 1281 (3d Cir. 1971); *Gardiner v. United States,* 458 F.2d 1265 (9th Cir. 1972); *Van Den Wymelenberg v. United States,* 397 F.2d 443 (7th Cir. 1968); *Fisher v. Commissioner,* 288 F.2d 574 (3d Cir. 1961), affg. T.C. Memo. 1960–62. We have given special consideration to the opinion in *Gardiner v. United States, supra,* by the Court of Appeals for the Ninth Circuit to which any appeal in this case would lie. We find that case inapposite because the total powers given the trustee therein are different and, more compelling, because the Ninth Circuit relied on a State court decision interpreting the decedent's intent to be consistent with the trustee's exercise of his power to allocate between principal and income. The other cases cited by respondent are equally distinguishable.

Briefly summarizing, a trust must be construed by perusing the four corners of the instrument to determine the grantor's purpose and intent. Such intent is significant in determining the manner in which the trustee will exercise his authority. *Estate of George I. Speer,* 57 T.C. 804 (1972); *Estate of*

*Abraham Simonson,* 59 T.C. 535 (1973); *Mercantile-Safe Deposit & Trust Co. v. United States,* 311 F.Supp. 670 (D. Md. 1970); *James T. Pettus, Jr.,* 54 T.C. 112, 123 (1970). A careful reading of the instrument indicates the intention of the petitioner to give her beneficiary a substantial present interest and it does not appear that she intended to favor her reverter to the beneficiary's detriment. We are not disposed to turn what are commonplace boilerplate trust powers into a substantive grant of dispositive flexibility. *Estate of George I. Speer, supra* at 808; *Estate of Edward E. Ford,* 53 T.C. 114, 128 (1969), affd. per curiam 450 F.2d 878 (2d Cir. 1971). The designated trustee is required to exercise his powers in an equitable manner and an abuse of his discretion in allocating items to principal and income would be subject to California court review.

In view of the foregoing we hold the income interest transferred to petitioner's trust beneficiary and the interest retained by petitioner to be susceptible of measurement on the basis of generally accepted valuation principles. Reference shall be made to section 25.2512–5(e) of the Gift Tax Regulations in valuing the reverter and—

*Decision will be entered under Rule 155.*