WILLIAM PEYTON CAMPBELL and KATHLEEN WILLIAMS CAMPBELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Campbell v. Comm'r
Docket No. 5262-76. United States Tax Court
T.C. Memo 1979-495; 1979 Tax Ct. Memo LEXIS 29; 39 T.C.M. (CCH) 676; T.C.M. (RIA) 79495; December 10, 1979, Filed William Peyton Campbell, pro se. James D. Thomas, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $3,583.14 and $3,175.75 in petitioners' Federal income taxes for 1972 and 1973, respectively. Concessions having been made by the parties, the issues remaining for decision are: 1. Whether petitioners, on their 1972 and 1973 Federal income tax returns, understated their gross income attributable to four trusts; 2. Whether the payments of real estate taxes and insurance premiums on real property during 1972 and 1973 by one of the trusts are deductible either by the trust or by petitioners *33 as an employee business expense; and 3. Whether petitioners are entitled to losses and employee business expense deductions claimed in 1972 and 1973 in excess of those allowed by respondent as charitable deductions. FINDINGS OF FACT Petitioners William Peyton Campbell (hereinafter petitioner or General Campbell) and Kathleen Williams Campbell (hereinafter Kathleen), husband and wife, were legal residents of Searcy, Arkansas, when they filed their petition. Petitioners filed timely joint Federal income tax returns for 1972 and 1973. Issue 1. Income From Trusts
A. The King Trusts
On or about December 10, 1961, Theresa Campbell King (Theresa), petitioners' daughter, and petitioner executed as grantor and trustee, respectively, an agreement entitled "Theresa Campbell King Trust Agreement" (Theresa King Trust). The trust agreement provided in pertinent part that: "The net income from said trust shall be distributed by the Trustee to the beneficiaries [petitioner and Kathleen], jointly or the survivor of them, not less than once each year." "Net income" was defined to include all "income remaining after providing for payment of usual and customary expenses." *34 The trust agreement was modified on June 27, 1964, to read in pertinent part: The net income from said trust shall be distributed by the Trustee to the beneficiaries [petitioner and Kathleen], jointly or the survivor of them, not less than once each year * * *. Provided, however, the Trustee shall distribute only that part of the net income which is derived from Capital gains as is requested each year by the beneficiaries and if no such request be made then all of such capital gains shall be retained as a part of the Trust fund and be reinvested as principal. On or about September 10, 1964, Thomas B. King (Thomas) and petitioner executed as grantor and trustee, respectively, an agreement entitled "Thomas B. King Trust Agreement - Sept. 10, 1964" (Thomas King Trust). Thomas was Theresa's husband from December 10, 1961, through September 10, 1964. Petitioner and Kathleen were lifetime beneficiaries. Upon the surviving beneficiary's death, the trust income was to be distributed to Theresa. At her death, the trust corpus was to be assigned to Theresa's living issue. The trust income was to be distributed in the same manner as the modified Theresa King Trust. The Thomas *35 King Trust was modified on April 30, 1969, to provide in pertinent part that: W. Peyton Campbell does hereby forever relinquish and release any and allright, title or interest in said Trust insofar as he is designated as a beneficiary thereof, and he shall not from and after this date, receive or be entitled to receive in any way any of the benefits or any of the income from said Trust * * *. B. The Campbell Trusts
On or about June 28, 1968, petitioner and Kathleen executed separate but similar revocable trusts (the Campbell Trusts). Petitioner is the settlor and trustee of his trust and Kathleen is the same for hers. Each is the successor trustee of the other's trust. In pertinent part the Campbell Trusts provide: ARTICLEI
DEFINITIONS: TRUSTPROPERTYDURINGSETTLOR'SLIFE
* * *
1.3 DuringSettlor'sLife. During the lifetime of the Settlor, the Trustee shall pay to him, or apply for his benefit, such amounts out of the income and/or principal of the trust estate as may be necessary for the health, support or general welfare of the Settlor. * * *
ARTICLEVII
POWERSOFTRUSTEE
*36 In addition to any powers conferred by law, the Trustee and Successor Trustee shall have the following powers, all of which shall be exercised in a fiduciary capacity and without order or license of court: * * *
B.To transfer, sell, exchange, partition, lease, mortgage, pledge, give options upon, or otherwise dispose of any property at any time held by them, at public or private sale or otherwise, for cash or other consideration or on credit, and upon such terms and conditions, with or without security, and for such price, as they may determine. * * *
ARTICLEXI
CONTROLBYSETTLOR
So long as the Settlor is the Trustee hereunder, the decision of the Settlor shall prevail and be binding as to all matters concerning the trust estate, without any liability on the part of the Settlor. * * * * * *
ARTICLEXIII
AMENDMENTANDREVOCATION
The Settlor reserves the right, at any time and from time to time, by instrument in writing delivered to the Successor Trustee, to amend, modify, or revoke this trust in whole or in part. C. General
On the 1972 U.S. Fiduciary Income Tax Returns for the King Trusts and the Campbell *37 Trusts, petitioners reported the following income and deductions: Deductions
Income
State
Federal
Capital
Income
Income Trust
Dividends
Interest
Gain
Tax
Tax
Theresa
King
$ 1,591
$2,774
$ 5,392 $0 $ 450
Thomas
King
1,627
0
0
0
0
Kathleen
Campbell
2,780
3,357
1,620
0
66
William
Campbell
5,929
0
12,780
157
1,401
$11,927
$6,131
$19,792 $157
$1,917
Petitioners reported the trusts' 1973 income and deductions as follows: Income
Capitol
Trust
Dividends Interest
Gaines
Theresa
King
$ 2,602
$ 3,500
$ 3,484
Thomas
King
2,047
-0-
380
Kathleen Campbell
2,687
3,695
653
William
Campbell
6,118
-0-
8,260
$ 13,454
$ 7,195
$ 12,777
Deductions
State
Real
Federal
Income
Estate
Income
Trust
Tax
Taxes
Insurance
Tax
Theresa
King
$ 80
$ -0-
$ -0-
$ 238
Thomas
King
46
-0-
-0-
-0-
Kathleen
Campbell
-0-
1,246
124
-0-
William
Campbell
440
-0-
-0-
808
$ 566
$ 1,246
$ 124
$ 1,046
During 1972 and 1973, the King Trusts and Campbell Trusts distributed to petitioners the dividend and interest income less the deductions and Federal income taxes due as detailed in the two tables *38 above. The trusts did not distribute any of the capital gains income. Petitioners reported as gross income on their 1972 and 1973 income tax returns only the amounts of the distributions, which were as follows: Trust
1972
1973
Theresa King Trust
$ 1,627
$ 5,784
Thomas King Trust
3,915
2,001
Kathleen Campbell Trust
6,071
5,012
William Campbell Trust
4,371
4,870
$15,984
$17,667
In his statutory notice of deficiency, respondent determined that petitioners' income attributable to the four trusts during 1972 and 1973 should have included the trusts' dividend and interest income not reduced by the deductions and Federal income taxes, and all of the capital gains income. Issue 2. Real Estate Tax Deductions and Insurance Deductions
In 1971, the Kathleen Campbell Trust acquired a mortgage on property owned by Theresa and located in Milwaukee County, Wisconsin. The trust paid insurance premiums of $124 on the property in 1972 and 1973. During the same years the trust paid real estate taxes of $1,239 and $1,246, respectively. At no time during those years did the trust or petitioners own the property. The trust paid the real estate taxes and *39 insurance premiums because Theresa was unable to make the payments. On their income tax return for 1972, petitioners claimed the real estate taxes and insurance premiums paid during that year as employee business expenses. In 1973, petitioners claimed the taxes and premiums as deductions from the trust's income. Respondent determined in his statutory notice of deficiency that, with regard to 1972, the real estate taxes and insurance premiums were not deductible as employee business expenses. With regard to 1973, respondent determined that the payments were not properly deductible by the trust and that petitioners' taxable income attributable to the trust should be increased by the corresponding amounts. Issue 3. Schedule C Losses and Employee Business Expense Deductions
Petitioner retired with pay in the early 1950's from the Unted States Army at the rank of general. He subsequently worked for Harding College as a fundraiser for approximately 13 years. To obtain contributions to the college, petitioner often entertained at the country club in Searcy, Arkansas, of which he was a member. He last used the club for that purpose in 1966.In 1973, petitioner sold his *40 membership in the club at a loss of $150. After ending his association with Harding College in 1966, petitioner became a member of the Service Corps of Retired Executives (SCORE). SCORE, which is affiliated with the U.S. small Business Administration (SBA), is a volunteer organization of retired people who give their time, talent, and expertise to assist and advise primarily struggling small businesses. In addition, SCORE's activities include: (1) drug prevention programs; (2) education projects; (3) clinics and hospital aid; (4) homes for juvenile delinquents; (5) community needs; (6) convict counseling; and (7) financial counseling for elderly citizens. During 1972 and 1973, petitioner was a very active member of SCORE. He traveled extensively assisting small businesses in and around Searcy. Petitioner did not receive compensation for his services and only occasionally did he receive reimbursement for his automobile expenses. On April 25, 1972, the Administrator of the SBA and the District Director, Little Rock, Arkansas, SBA, acclaimed petitioner the SCORE Volunteer of the Year.
During 1972 and 1973, Kathleen served without pay as the treasurer for her church. On their *41 1972 and 1973 Federal income tax returns, petitioners claimed expenses, incurred as a SCORE counselor and church treasurer, as employee business expense deductions and business losses. Respondent determined in his statutory notice of deficiency that petitioners were entitled to only a portion of the claimed losses and deductions as charitable contributions and miscellaneous deductions. Following is a table detailing the losses and deductions claimed by petitioners and the amounts allowed by respondent: Deduction or
Loss Claimed Item
1972
1973
Automobile Ex-
pense (less
reimbursement)
$1,027
$1,301
Organization
Dues
34
58
Conventions/
Conferences
88
170
Country Club
Sale
0
150
Periodicals and
Books
145
187
Entertainment
602
741
Gifts
85
92
Contributions
25
33
Office in
Home
360
360
House Appraisal
0
25
Miscellaneous
144
115
Medical
0
0
State Real Prop-
erty Tax
1,239
0
Other Taxes
0
0
Fire/Cyclone
In-
surance
124
0
$3,873
$3,232
Respondent's Determination
Charitable
Miscellaneous
Contribution
Deductions
Item
1972
1973
1972
1973
Automobile Expense (less
reimbursement)
$ 280
$ 435
$ -0-
$ -0-
Organization Dues
5
10
-0-
-0-
Conventions/
Conferences
31
-0-
-0-
-0-
Country Club Sale
Periodicals and
Books
119
80
-0-
13
Entertainment
-0-
-0-
-0-
-0-
Gifts
-0-
-0-
-0-
-0-
Contributions
149
36
-0-
-0-
Office in Home
-0-
-0-
-0-
-0-
House Appraisal
-0-
-0-
-0-
-0-
Miscellaneous
48
57
14
10
Medical
-0-
-0-
150
150
State Real
Property Tax
-0-
-0-
-0-
-0-
Other Taxes
-0-
-0-
1,818
1,409
Fire/Cyclone
Insurance
-0-
-0-
-0-
-0-
$ 632
$ 618
$ 1,982
$ 1,582
*42 OPINION Issue 1. Income From Trusts
In 1972 and 1973, petitioners reported their gross income from the King Trusts and the Campbell Trusts as the dividend and interest income earned by the trusts less State income taxes, real estate taxes, paid insurance premiums, and Federal income taxes due. Petitioners did not include the capital gains income earned by the trusts. Rather, they reported the capital gains income, less the long-term capital gains deduction, solely as "Taxable income of a fiduciary." Respondent contends, and we agree, that petitioners were the owners of the four trusts pursuant to sections 671 through 679. Consequently, all items of income, deductions, and credits attributable to the trusts should be included in computing petitioners' taxable income for 1972 and 1973. A. The King Trusts
During 1972 and 1973, both the Theresa King Trust and the Thomas King Trust provided that the ordinary income of the trusts was to be distributed at least annually to the trust beneeficiaries. The trusts further provided that the income derived from capital gains was to be distributed only as requested by the beneficiaries. Kathleen is a beneficiary of both the *43 Theresa King Trust and the Thomas King Trust. Petitioner, however, although initially a beneficiary of both trusts, relinquished his interest in the Thomas King Trust on April 30, 1969. Neither Kathleen nor petitioner had ever requested that the capital gains be distributed.
Petitioners contend that the deciding factor in determining the owners of a trust is the "Dominant Motive of Trust." They further contend that their dominant motive was to leave the capital gains in the trusts. As evidence of this dominant motive, petitioners note that the capital gains income has never been distributed by the trusts. Accordingly, they conclude that they should not be considered the owners of the King Trusts. The language of sections 671[1]/ and 678 [2]/ does not support petitioners' argument. The cases cited by petitioners also fail to support their argument.See Martinez v. Commissioner,67 T.C. 60 (1976) and Clapham v. Commissioner,63 T.C. 505 (1975). *44 Section 678(a)(1) clearly provides that a person with the power, exercisable solely by himself, to vest the corpus or the income in himself will be treated as the owner of that portion of the trust over which his power exists. Here, Kathleen and petitioner had the power exercisable solely by themselves to receive the King Trusts' [3]/ capital gains income. Accordingly, pursuant to section 678(a)(1), petitioners are deemed to be the owners of the capital gains income from the King Trusts. See also Mallinckrodt v. Nunan,146 F.2d 1 (8th Cir. 1945), cert. denied 324 U.S. 871 (1945). Section 671 provides that the items of income, deductions, and credits against tax of the trusts, which are attributable to *45 that portion of the trusts considered owned by petitioners, shall be included in computing petitioners' taxable income. Therefore, respondent correctly included the capital gains income in petitioners' taxable income. Moreover, respondent correctly allowed a deduction for paid State income taxes, and disallowed a deduction for Federal income taxes due. Sec. 164(a)(3); sec. 1.164-2(a), Income Tax Regs.
Petitioners alternatively contend that section 678(c) exempts them from the coverage of section 678(a)(1).Section 678(c) provides in pertinent part: (c) Obligations of Support.--Subsection (a) shall not apply to a power which enables such person, in the capacity of trustee or cotrustee, merely to apply the income of the trust to the support or maintenance of a person whom the holder of the power is obligated to support or maintain except to the extent that such income is so applied. * * * Petitioners observe that General Campbell, as trustee of the King Trusts, never distributed capital gains income to Kathleen, a person whom he is obligated to support. Thus, *46 they conclude that section 678(c) applies here. We disagree. Petitioners have misapplied section 678(c) to the language of the trust instruments. Kathleen, the beneficiary of both trusts, and petitioner, the beneficiary of at least the Theresa King Trust, had the power to vest the income in themselves, and not merely the power to apply the income for the benefit of another (i.e., their spouse) whom they were obligated to support. Consequently, section 678(c) is inapposite here. B. The Campbell Trusts
In June 1968, petitioner and Kathleen created separate but similar revocable trusts. Each was the trustee of his or her own trust. The Campbell Trusts made distributions to petitioner and Kathleen, similar to those from the King Trusts, during 1972 and 1973. It is our opinion that petitioners are the owners of the trusts under section 676. Section 676 provides: SEC. 676. POWER TO REVOKE. (a) General Rule.--The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any *47 time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party, or both.
(b) Power Affecting Beneficial Enjoyment Only After Expiration of 10-Year Period.--Subsection (a) shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that a grantor would not be treated as the owner under section 673 if the power were a reversionary interest. But the grantor may be treated as the owner after the expiration of such period unless the power is relinquished. Article XIII of the Campbell Trusts specifically reserves the petitioners' right, as settlors, to amend, modify, or revoke the trusts at any time, in whole or in part. Consequently, pursuant to section 671, the Campbell Trusts' income is includible in petitioners' taxable income. Because we have found that petitioners own the trusts under section 676, it is unnecessary to reach the issue of whether sections 674, 675, and 677 also require that petitioners be deemed the owners of the Campbell Trusts. Petitioners contend that section 676(b) excepts them from coverage of section *48 676(a) because they did not exercise their powers for over a 10-year period. Petitioners, however, have clearly misread section 676(b). To be covered by that section, petitioners must have been unable to exercise their power for a 10-year period. Here, they merely chose not to. The retention by petitioners of the power to revoke the trust at any time, even though they did not exercise that power, requires the inclusion of the trusts' income in petitioners' taxable income. See Helvering v. Clifford,309 U.S. 331 (1940). Issue 2. Real Estate Tax Deductions and Insurance Deductions
During 1972 and 1973, the Kathleen Campbell Trust paid insurance premiums of $124 each year on real property owned by Theresa. It also paid real estate taxes in the amounts of $1,239 and $1,246, respectively. The Kathleen Campbell Trust, which held a mortgage on the property, made the payments to protect its investment because Theresa was unable to do so. On their 1972 return, petitioners claimed the taxes and insurance premium paid by the trust that year as employee business expense deductions. The 1973 payments were claimed as deductions by the trust. Respondent disallowed *49 all of these deductions. Respondent argues that the insurance premiums are not deductible because they were in the nature of a gift. Petitioner's testimony at trial indicates that the trust was holding the mortgage on the property as an investment. Theresa had agreed that any gain realized on the sale of the property would belong to the trust. The mortgage evidently did not obligate Theresa to bear the cost of such insurance or entitle the mortgagee to have the cost thereof added to the mortgage debt. It is our opinion that the trust paid the insurance premiums on the property, not as a gift, but for "the management, conservation, or maintenance" of the property which petitioners expected to sell at a gain. The payments of the insurance premiums are therefore deductible by petitioners, as owners of the trust, under sections 212(2)[5]/ and 671. [6]/ Sec. 1.212-1(b), Income Tax Regs.
*50 Although the trust paid the real estate taxes to conserve and maintain the property within the meaning of section 212, the taxes are not deductible. Section 1.212-1(e), Income Tax Regs., provides that section 212 does not-- allow the deduction of any expenses which are disallowed by any of the provisions of subtitle A of the Code, even though such expenses may be paid or incurred for one of the purposes specified in section 212. Section 164 allows a deduction for real estate taxes, but generally "only by the person upon whom they are imposed." Sec. 1.164-1(a), Income Tax Regs.; Cramer v. Commissioner,55 T.C. 1125, 1130 (1971); see also Magruder v. Supplee,316 U.S. 394, 396 (1942). Here, the taxes were imposed on Theresa. Therefore, only Theresa, and not the trust, is entitled to claim a deduction for them. Instead, the taxes paid by the trust are capital expenditures and thus increase the trust's basis of the mortgage. Hadley Falls Trust Co. v. United States,110 F.2: 887, 893 (1st Cir. *51 1940); Estate of Schieffelin v. Commissioner,44 B.T.A. 137, 140 (1941). Issue 3. Schedule C Losses and Employee Business Expense Deductions
Of the amounts of $2,846 and $1,931 claimed by petitioners as deductions for employee business expenses on their 1972 and 1973 returns, respectively, respondent allowed $145 in 1972 and $180 in 1973 as charitable contributions. He also allowed $14 in 1972 and $23 in 1973 as miscellaneous deductions. Additionally, respondent allowed as charitable contributions $207 in 1972 and $3 in 1973 not claimed on petitioners' returns for those years. Of the $1,027 and $1,301 which petitioners claimed on Schedule C as losses from their activities as a counselor for SCORE and church treasurer in 1972 and 1973, respectively, respondent allowed, as charitable contributions,$280 in 1972 and $435 in 1973.These amounts constituted petitioners' out-of-pocket automobile expenses, computed at 6 cents per mile. Petitioners dispute respondent's determinations. They assert that the $150 loss incurred in 1973 on the sale of petitioner's membership in the country club in Searcy is a deductible employee business expense relating to his position *52 as a fundraiser for Harding College. Moreover, petitioners contend that the remainder of the claimed employee business expense deductions and the claimed Schedule C losses disallowed by respondent are deductible because they were incurred in furtherance of petitioner's business as a SCORE counselor. Alternatively, petitioners assert that these amounts disallowed by respondent are deductible as charitable contributions. A. $150 Loss
Generally, expenses incurred as a member of a country club, or losses suffered on the sale of the membership, are not deductible-- unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business. Sec. 274(a)(1)(B). See sec. 1.274-2(e)(3), Income Tax Regs.The country club membership is considered as used primarily for the furtherance of his business if the taxpayer establishes that more than 50 percent of the total calendar days of use of the facility by the taxpayer during *53 the taxable year were days of business use. Sec. 1.274-2(e)(4)(iii), Income Tax Regs. To pass this test, however, the taxpayer must satisfy the strict substantiation requirements found in section 1.274-5, Income Tax Regs. We do not think petitioner satisfied those requirements. Petitioner testified that during 1964, 1965, and 1966, the last years in which he used the country club, the "official use" relating to his fundraising activities for Harding College constituted 87 percent of his total use of the club. Nevertheless, even assuming petitioner's activities for Harding College qualify as a business for purposes of section 274, we think his unsupported, uncorroborated testimony as to the use of the country club is insufficient to satisfy the substantiation requirements. Consequently, we agree with respondent's denial of the deduction. B. SCORE-Related Expenses
In approximately 1966, petitioner became a member of SCORE, a volunteer organization primarily established to assist and advise struggling small businesses. During 1972 and 1973, he traveled extensively as an officially appointed SCORE counselor. Petitioner *54 was not paid for his efforts, and only occasionally received reimbursement for his automobile expenses. Petitioners deducted the unreimbursed automobile expenses on Schedule C of their 1972 and 1973 returns. In addition, petitioners deducted on their 1972 and 1973 returns a veriety of employee business expenses as detailed in our Findings. Respondent allowed a small part of these losses and employee business expenses as charitable and miscellaneous itemized deductions. Petitioners assert that the disallowed deductions are deductible as claimed on the returns because they were incurred in the furtherance of a business activity. Petitioners argue that U.S. Army personnel on active duty are obligated to follow all directives of their commanders, however informally stated. Petitioners contend that because General Campbell was receiving retirement pay as a retired regular Army officer, he also was required to follow the informal directives given by those in active command of the Army. Petitioners further contend that General Campbell, in his activities with SCORE, was obeying an informal directive in which the Army urged its members, including retirees, to take part in community *55 affairs. General Campbell should be commended for the time and effort he has expended over the years in providing the worthwhile service to small businesses in Arkansas. It is our opinion, however, that his activities did not constitute a trade or business which would entitle petitioners to their claimed Schedule C losses and empoloyee business expense deductions.None of the numerous letters and copies of magazine articles and Army regulations offered as evidence at trial establish that General Campbell's retirement pay was conditioned by the performance of charitable services by him. Therefore, respondent correctly denied these deductions as not in the furtherance of a trade or business. C. Charitable Contributions
Petitioners argue generally that many of the items disallowed as a business expense or loss are nonetheless deductible as charitable contributions. After careful review of the items, we have found the following allowable charitable deductions for 1973 in excess of those allowed by respondent: Automobile expense (parking), May 6,
September 20, and November 20
$ 3.00
Room and board, American Legion Annual
Convention, July 13--15
30.30
$33.30
*56 See sec. 1.170A-1, Income Tax Regs.
Petitioners argue that it is unconstitutional to allow 12 cents per mile for business expense deductions while only allowing 6 cents per mile for charitable contributions. This discrepancy, however, is justified. Certain items relating to the use of an automobile, such as depreciation, may not be taken into account in computing the amount paid for transportation with respect to the rendering of charitable services, whereas, they are allowed for business purposes. Accordingly, the taxpayer must use a lower standard mileage rate. Rev. Proc. 70-24, 1970-2 C.B. 505, superceded by Rev. Proc. 74-24, 1974-2 C.B. 477. Because petitioners have failed to meet their burden of proof on the deductibility of the remaining items, we agree with r*espondent that those items constitute nondeductible personal expenditures. To reflect the concessions by the parties and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. / All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS. Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D.No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61↩ (relating to definition of gross income) or any other provision of this title, except as specified in this subpart. 2. / SEC. 678. PERSON OTHER THAN GRANTOR TREATED AS SUBSTANTIAL OWNER. (a) General Rule.--A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which: (1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself * * *↩
3. / Because petitioners filed joint returns for 1972 and 1973, it is unnecessary to decide whether the Apr. 30, 1969, modification of the Thomas King Trust constituted a renunciation or disclaimer of petitioner's interest in the trust under sec. 678(d)↩.
5. /SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
6. / For the text of sec. 671, see footnote 2, supra.↩