[Civ. No. 17767.   First Dist., Div. One.   Jan. 14, 1958.]

Estate of MINNA C. LACKMANN, Deceased. E. A. LACK-MANN, SR., as Trustee, etc., Appellant, v. DEPART-MENT OF MENTAL HYGIENE, etc., Respondent.

John B. Ehlen for Appellant.

Edmund G. Brown, Attorney General, Elizabeth Palmer and Wiley W. Manuel, Deputy Attorneys General, for Respondent.

BRAY, J.—Appeal from order of the probate court ordering trustee to pay to the Department of Mental Hygiene of the State of California certain sums for past and future support of George H. Lackmann.

### QUESTIONS PRESENTED

1. Can the court order payment from a testamentary spendthrift trust estate for care of the beneficiary at a state mental institution over the objection of a trustee given "complete and absolute discretion?"

2. Was the court's power limited to requiring an expenditure of not more than one-third of the net income?

### FACTS

Minna C. Lackmann died testate June 11, 1944, leaving three adult children, Helen Roberts, Zeal Murphy and George Lackmann. George had been committed to the Mendocino

State Hospital on February 19, 1943, and ever since has been and still is a patient there. October 22, 1951, testatrix' entire estate was distributed to the trustee in accordance with the terms of the will. The first demand of the department for payment of George's care was made June 20, 1956, when the department set charges to date thereof at $5,220 and requested payment for future care at the "maximum amount possible within the ability of the trust estate to pay . . ." The trustee then petitioned the probate court for instructions. After a hearing the court ordered payment to the department for George's support, care and maintenance for the period September 1, 1952,* through October 31, 1956, and of the sum of $122 per month thereafter, as long as George remains a patient of a state hospital or until changed by the director of the department, or by order of court.

1. *Effect of Spendthrift Trust and Discretion Given Trustee.*

The will was executed prior to the commitment of George to a state hospital. As will hereafter appear, it purported to give the trustee complete and absolute discretion in the amount he should expend for George's care and maintenance. Appellant contends that a spendthrift trust cannot be made liable for the care of a person committed to a state hospital, first, because the interest of a beneficiary in a trust estate is not subject to the claim of a creditor of the beneficiary (see *Seymour* v. *McAvoy,* 121 Cal. 438 [53 P. 946, 41 L.R.A. 544]; *Estate of De Lano,* 62 Cal.App.2d 808, 813 [145 P.2d 672]) and the department, says appellant, is a creditor claimant of George's interest here. Moreover, contends appellant, the discretion invested in the trustee by the terms of the trust entitled the trustee to determine that trust funds should not be used for George's care while he was being adequately taken care of otherwise, i.e., by the state.

The probate court held that it was an abuse of discretion for the trustee to refuse to pay the department for George's care. ▉ Section 19, Welfare and Institutions Code, the code which provides for the care of persons in the state hospitals, states that the code's purpose is to provide for care of people "in need thereof" and to provide assistance to the "needy and distressed." Certainly George does not come in that category. The state never intended to provide

---

*The court held that charges accruing prior to that date were barred by section 345, Code of Civil Procedure.

care and maintenance to persons with resources of the amount left for George's care. It would be unreasonable to hold that any discretion given a trustee in the administration of a trust for another's care could enable the trustee to cast his care and maintenance on the state. A contention somewhat similar to that of appellant was made in *Estate of Yturburru*, 134 Cal. 567 [66 P. 729]. There the guardian of the estate of an incompetent contended that the law making the guardian of the estate of an incompetent, where the estate is sufficient, responsible for the maintenance of the ward committed to a state hospital was unconstitutional. In holding that it was not, the court pointed out that section 38, Civil Code, makes an incompetent person liable for the reasonable value of things furnished to him, necessary to his support, and then stated that this was so at common law where the necessaries were furnished by an individual and the court could "see no reason why the same rule should not apply to a state hospital for the insane, which does and furnishes for the insane person only those things required by the law of the state. Certainly, those things which are required by law to be done and furnished for an insane person may safely be classed as necessaries." (P. 568.) ". . . it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so." (P. 569.) Section 6655, Welfare and Institutions Code, provides that the guardian of the estate of anyone committed to a state mental hospital, having sufficient estate for the purpose, must pay for his maintenance to the extent of his estate, and that such payment may be enforced by the order of the probate court. In *Estate of Phipps*, 112 Cal.App.2d 732 [247 P.2d 409, 33 A.L.R.2d 1251], it was held that section 6655 and section 6650 which provides that certain relatives of a mentally ill person "and the estate of such mentally ill person" shall be liable for his care at a state hospital, required that his estate be liable for care furnished by a state hospital to him prior to the acquisition of any estate or property by him as well as thereafter. While neither sections 6655 nor 6650 refer to trustees of a trust, we see no reason why that fact should be deemed a legislative determination that beneficiaries of trust estates are to receive free treatment at a state hospital. As said in the concurring opinion in *Estate of Yturburru, supra,* 134 Cal. at page 570, concerning the obligation of the estate of an insane person to pay state hospital costs for care of such person: "If they

have a right to free support because paupers have, to make the law operate alike upon all, it would seem that the balance of the community would be equally entitled.''

■ ''[T]he estate of such mentally ill person'' in section 6650 includes the beneficiary interest of such person in a trust for his benefit. *Grames* v. *Norris* (1954), 3 Ill.2d 112 [120 N.E.2d 7, 9], held that the income of a testamentary trust for the benefit of an incompetent is ''estate'' within the meaning of the Illinois Mental Health Code requiring payment of hospital costs from an inmate's estate. See also *Title Ins. & Trust Co.* v. *Duffill*, 191 Cal. 629, 647 [218 P. 14], holding that a beneficiary of a testamentary trust has ''an equitable estate or beneficial interest'' in the property of the trust. ■ We are here dealing with the obligation of a trustee to administer the trust as required by the trust instrument. It provides: ''I desire that my trustee provide, out of the income of my properties, or if the income should be inadequate, out of the proceeds from the sale of the corpus of the trust, *for the proper care, support and maintenance of my son . . .*'' (Emphasis added.) This is the purpose of that portion of the trust dealing with George. While this language is followed by ''and I vest in my said trustee *complete and absolute discretion* as to how much he should expend for the proper care, support and maintenance of my said son'' (emphasis added) such discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for George and to throw him on the charity of others or of the state.

''A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust.'' (Civ. Code, § 2269.) ■ As stated in *Guardianship of Thrasher*, 105 Cal.App.2d 768, 771 [234 P.2d 230], and in *Estate of O'Donnell*, 85 Cal.App.2d 1 [192 P.2d 94, 193 P.2d 143], the department is George's custodial guardian, and it is its right and duty to safeguard the welfare of the incompetent person committed to its care. In seeking moneys for his support from his interest in the trust estate, the department is trying to give its ward the protection which the trustee has refused to give.

*City of Bridgeport* v. *Reilly* (1946), 133 Conn. 31 [47 A.2d 865], held that the trustee of a spendthrift trust did not abuse his discretion in refusing to reimburse the city of Bridgeport

for money paid by it to the Connecticut State Hospital for the care of the insane beneficiary of the trust. The opinion expressly repudiated the statement in Restatement, Trusts, section 157, that even in a spendthrift trust the interest of the beneficiary can be reached to satisfy a claim against him for necessary services rendered or necessary supplies furnished. That case supports appellant's position. However, we believe that the decision in the later case of *In re Gruber's Will,* (N.Y. 1953) 122 N.Y.S.2d 654, is more in keeping with the California policy as expressed in section 38, Civil Code, and sections 6655 and 6650, Welfare and Institutions Code. Likewise it is not contrary to section 157 of the Restatement, and is also in line with illustration 7 of section 187 of the Restatement, page 484: "A bequeaths property to B in trust directing B to provide suitable maintenance for C out of the income, and authorizing B to determine what constitutes suitable maintenance. C becomes insane and is confined in a public asylum. B erroneously believes that under the terms of the will he is not justified in making any payment for C under the circumstances. For this reason B refuses to make any further payment for C. The court may order B to make such payments as are necessary for the suitable maintenance of C." In the Gruber case the testamentary trust provided that the testator's daughter should "receive support . . . if necessary," and that the trustee should have full discretion in determining the amount of such support. It further provided that if the daughter "in any manner received support" that should be taken into consideration by the trustee in determining the amount to be expended for the beneficiary. The trustee refused to pay for the daughter's care at the state mental hospital. The court ordered him to do so. It cited a number of New York cases holding it to be the law of that state that there could be no doubt that the state was clearly entitled to payment for the support of the daughter from a trust estate of this kind. The will stated that the trustee should take into consideration whether the daughter "in any manner received support." That language, said the court, could not include public support. See Scott on Trusts, 2d ed., vol. II, section 157.2, pp. 1115, 1117, to the effect that claims of creditors supplying necessaries to the beneficiary of a spendthrift trust are enforceable against his interest in the trust, and that claims of public bodies for the support in a public institution of an insane beneficiary of such a trust are enforceable.

### 2. One-Third Limitation.

█ Clause 3 of the will provided: "(a) I desire that my trustee provide, out of the income of my properties, or if the income should be inadequate, out of the proceeds from the sale of corpus of the trust, for the proper care, support and maintenance of my son, George Lackmann, and I vest in my said trustee complete and absolute discretion as to how much he should expend from the trust funds for the proper care, support and maintenance of my said son; but I direct and instruct my said trustee to be guided in determining the amount to be expended for such purposes by my desire that, as nearly as is practicable under the circumstances, the amount thus expended shall not exceed one-third of the net income of my said properties as computed by my trustee."

The will authorized the trustee in his discretion to sell any and all of the properties and to invest them but instructed him not to sell the home in which George was living at the time of the execution of the will during his lifetime unless convinced that George no longer desired to live there. The will provided* that the trustee should pay one-third of the net income to the trustor's daughter Zeal and one-third to her other daughter Helen. Provision was made for the disposition of each daughter's share of the income in case of such daughter's death. The trust is to continue until George's death and the majority of Helen's daughter. Thereafter the trust estate residue is to go to the daughters equally or to their respective heir or heirs, in the event of death.

The probate court found that the provisions of the trust "do not limit payment for his proper care, support and maintenance to one-third of the income of the trust." The clause referring to the one-third limitation is that "as nearly as is practicable" the amount expended for his care shall not exceed one-third of the net income. However, the trustee is empowered as hereinbefore set forth, if the income of the trust property is inadequate for the proper care of George, to use the proceeds from the sale of the corpus. As said in *Estate of Greenleaf*, 101 Cal.App.2d 658, 662 [225 P.2d 945]: ". . . the basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." It is clear from the will that the testator's

---

*There was also a provision directing the executor to pay the necessary expenses for the proper care of George until the distribution of the estate to the trustee.

primary desire in the creation of the trust was that George receive proper care and while the trustee was given complete and absolute discretion in determining how or in what manner that care was obtained, his discretion was necessarily limited to there being care supplied and to its being proper. These factors show this primary purpose:—the prohibition against selling the house in Sharp Park; the direction to the executor to pay necessary expenses of George's care prior to distribution; George's death is the point of termination of the trust; the fact that the trustor made no change in the direction to the trustee to provide care for George after she knew that George was being adequately cared for in the state hospital; the direction to the trustee to use the corpus, if the income were inadequate, for George's care with a guide of using only one-third of the income as nearly as practicable under the circumstances; the fact that it is provided that on George's death prior to the majority of Helen's daughter his share in income is to go to the daughters, each getting one-sixth.

The trustee refused to make any payment whatever for George's care. The following language from *Coker* v. *Coker* (1922), 208 Ala. 354 [94 So. 566], is applicable to our case: "It is true in general that the court will not interfere with the exercise of discretionary powers conferred upon a trustee. But in this case something depends upon the proper construction of the trust, and the court will not favor a construction which would confer an arbitrary or capricious authority. [Citation.] Testator, very clearly, intended that his widow should have ample, suitable, and proper maintenance. The discretion left in the trustee was a reasonable discretion, whereas it appears that the trustee has administered the trust wholly without regard to the claims of the designated beneficiary, or rather perhaps it would be more correct to say that he has exercised no discretion whatever. Appellee's ward is maintained at the expense of the state of Florida in one of its charitable institutions. The necessary inference from the evidence is that not one penny of the large estate left by testator has been devoted to her care or comfort. These facts disclose a total perversion of the trust; a complete abandonment of the purposes for which it was created; and in such case the court will provide for the administration of the trust under its own orders, will ascertain the amount necessary to an ample, suitable, and proper maintenance . . . according to the true intent of the trust . . ."

In view of the fact that George is mentally ill, proper care can best (and less expensively) be given at a state hospital. Therefore, the trustee is required to pay from the trust income, or corpus if the income is not adequate, the reasonable cost of that care. (See *Estate of Perl*, 110 Cal.App.2d 8 [242 P.2d 101], as to the reasonableness of the rates charged by the state hospital.) If that cost should exceed one-third of the net income then the one-third limitation is not, in the words of the will, "practicable under the circumstances." A reading of the will shows that the provision for payment to the daughters of a one-third of the net income each and of the residue of the estate on George's death, is subject to the requirement that the estate must be used first for George's care. This is not a situation like that in *In re Boles' Estate* (1934), 316 Pa. 179 [173 A. 664], where an incompetent person had inherited a one-sixth interest in a testamentary estate (not a trust). The lower court had ordered payment to the state out of the *general* funds of the estate for the person's care in the state hospital and then distributed to him his one-sixth interest in the residue of the estate. The Supreme Court held this improper as requiring the brothers and sisters who inherited the balance of the estate to contribute towards his support. There each legatee was entitled to a full one-sixth of the estate without diminution for the brother's care. In our case, the will made the sisters' shares in the trust estate subject to diminution if necessary for George's proper care. Nor is *Estate of Van Deusen*, 30 Cal.2d 285 [182 P.2d 565], in point. There a testamentary trust provided that only the income should be used for the support of the life beneficiaries. The probate court attempted to permit the trustee to pay additionally out of corpus. The reviewing court held that this was improper. In our case the trust expressly provided for payment out of corpus if necessary.

*Estate of Ferarazza*, 219 Cal. 668 [28 P.2d 670], and *Estate of Bayly*, 95 Cal.App.2d 174 [212 P.2d 587], are not in point. They hold that moneys received by the guardian of an incompetent war veteran as disability compensation are exempt from enforced payment for care furnished by a state hospital prior to the appointment of the guardian because of express federal and state exemptions. There are no such exemptions applicable in our case.

One-third of the net income of the trust (without allowance for reserves, depreciation, trustee's and attorney's fees—

apparently the trustee has waived his fees) for the period for which the court ordered payment to the state for accrued care of George was slightly less than the amount ordered paid. Nevertheless, as that amount as well as the $122 per month thereafter were necessary for George's proper care, the court acted correctly.

During the period of the accounting the trustee paid George directly $387.50. Appellant contends this amount should have been deducted from the amount of the state's claim, apparently upon the basis that the trustee could not expend for George more than one-third of the income. As we have heretofore shown, the trustee is not so limited. Hence there is no reason for deducting this amount from the moneys due the state.

The trust had on hand July 31, 1956, only $3,325.13 to pay the moneys directed by the court to be paid. However, during the period above mentioned the trustee had paid the two daughters a total of $10,800. As before stated, the trustee's obligation was to George first.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 13, 1958, and appellant's petition for a hearing by the Supreme Court was denied March 12, 1958. Traynor, J., did not participate therein.