(No. 61997

THE DEPARTMENT OF MENTAL HEALTH AND DE-
VELOPMENTAL DISABILITIES, Appellant, v.
KEVIN E. PHILLIPS, Trustee, *et al.*, Appellees.

*Opinion filed October 17, 1986.*

86

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks and Roma Jones Stewart, Solicitors General, and Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellant.

Lee Ann Watson and David K. Schmitt, of Katten, Muchin, Zavis, Pearl & Galler, of Chicago, for appellees.

JUSTICE WARD delivered the opinion of the court:

The Department of Mental Health and Developmental Disabilities (Department) filed a petition in the circuit court of Cook County seeking reimbursement from Kevin E. Phillips (respondent) as the trustee of a spend-thrift trust established for the benefit of his brother, Steven, a mentally handicapped young man. Following the filing of cross-motions for judgment on the pleadings, the circuit court granted the Department's motion for summary judgment and denied the motion of the respondent. The court denied also the respondent's peti-

tion for reformation of the trust, which, if allowed, would have explicitly created a fund for Steven's maintenance and care supplemental to the care provided at State expense. The appellate court reversed, holding that reformation of the trust was warranted because the occurrence of an unforeseen contingency had operated to frustrate the intent of the settlor. (133 Ill. App. 3d 337.) We granted the Department's petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315(a)).

Steven Phillips, who is now 31 years of age, has required institutional care throughout his life. Since November 1976 he has resided at the Waukegan Developmental Center, where all his educational, medical and general welfare needs have been provided by the Department. As of June 1, 1983, the total expenditure by the Department for Steven's support was $73,474.40, and these expenditures continue at a rate of $948 per month.

On February 15, 1974, Sue Phillips established an *inter vivos* trust for the benefit of Steven, her son. At that time Steven was 18 years old and under our law legally an adult. The trust, where it is pertinent here, provides:

"2.01 Use of Income and Corpus. The Trustee is authorized, in his sole and absolute discretion, at any time and from time to time, to pay to or apply or expend for the benefit of STEVEN so much or all of the income and corpus of STEVEN'S TRUST as the Trustee deems necessary or advisable for the beneficiary's education (including a college or a professional education), maintenance, medical care, support, general welfare and comfortable living. Upon STEVEN'S death the Trustee, subject to the provisions of Paragraph 2.02 hereof shall distribute STEVEN'S TRUST to the then living issue of my former husband EDWARD PHILLIPS, *per stirpes.*"

At present, Steven's two brothers, one of whom is Kevin Phillips, the trustee, and Steven's two minor nephews are the only remaindermen. The trust contains a spendthrift clause which generally would protect the

trust income and corpus from the claims of creditors or legal process.

Trustee Phillips has not disbursed funds from the trust to the Department to compensate for the services provided Steven. All income from the trust corpus has been reinvested, and the unaccumulated income and corpus of the trust amounted to approximately $75,000 at the time the Department filed this action.

The Department argues that, under section 5—105 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 5—105), the estate of a recipient of Department services is subject to a services charge at a rate determined in accordance with the Code and, the Department says, the trust assets should therefore be used to reimburse the Department for Steven's care at the Waukegan Developmental Center. The respondent's answer to this is that the trust is not part of Steven's estate for purposes of section 5—105, and he asserts that, in any event, it was not an abuse of the absolute discretion given him in the trust instrument to refuse to disburse trust funds to the Department.

Section 5—105 states:

> "Each recipient of services of the Department, and the estate of such recipient, is liable for the payment of sums representing charges for services to such recipient at a rate to be determined by the Department in accordance with this Act. If such recipient is unable to pay or if the estate of such recipient is insufficient, the responsible relatives are severally liable for the payment of such sums, or for the balance due in case less than the amount prescribed under this Act has been paid. *** No parent is liable under this Act for the services charges incurred by a child after such child reaches the age of majority." Ill. Rev. Stat. 1983, ch. 91½, par. 5—105.

In *Department of Mental Health & Developmental Disabilities v. First National Bank* (1982), 104 Ill. App. 3d 461, the appellate court held that, under section 5—

105, the beneficial interest of a spendthrift trust is to be considered part of the estate of a recipient of Department services. A settlor's purpose in establishing a spendthrift trust is to provide for the support and care of the beneficiary while protecting him from his own improvidence. It is sensible to hold that the expense to the Department of caring and supporting a recipient of its services should be a sound ground for a claim by the Department against the beneficiary of a spendthrift trust. We agree with the court's determination that a spendthrift trust may be considered under the section as part of the estate and observe that such a holding is consistent with the "long-standing policy in this State to seek payment for its costs from those recipients of services who can afford to pay and thereby to lessen the burden on taxpayers." 104 Ill. App. 3d 461, 466. See also *Kough v. Hoehler* (1952), 413 Ill. 409, 418-19.

Too, the court in *First National Bank* rejected the contention that a trustee may avoid paying for or contributing to the support of a beneficiary under section 5—105 simply because the terms of the trust grant the trustee absolute discretion in distributing the income and corpus of the trust. (104 Ill. App. 3d 461, 464-65.) The court cited with approval *Estate of Lackmann v. Department of Mental Hygiene* (1958), 156 Cal. App. 2d 674, 320 P. 2d 186, where it was stated that " 'such discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for [the beneficiary] and to throw him on the charity of others or of the State.' 156 Cal. App. 2d 674, 678, 320 P.2d 186, 188-89." 104 Ill. App. 3d 461, 465.

As an alternative position, trustee Phillips filed a petition for reformation of the trust so that, as reformed, the trust would provide that the trust assets are not "made available to provide primary support for Steven," but rather would be reserved to finance care for Steven

beyond that provided by public funds. Specifically, the respondent seeks to amend paragraph 2.01 to grant the trustee discretion to distribute funds to procure specialized medical or dental treatment unavailable through the Department facilities, to seek private rehabilitative and educational training, to provide recreational and vacation opportunities when feasible, and to pay the cost of transportation for Steven and family members to facilitate his contact with the family.

It is only in extreme cases that a court will permit the reformation of a trust, and the authority, when given, is to be exercised with great caution. (*Stough v. Brach* (1946), 395 Ill. 544, 549.) Yet a court will allow reformation of a trust when an unforeseen exigency arises which may place the *cestui que trust* in "pinching want," making it necessary for the court to place itself in the position of the settlor and carry out his intention as if he had anticipated the changed circumstances. *Curtiss v. Brown* (1862), 29 Ill. 201, 230; *Thorne v. Continental National Bank & Trust Co.* (1958), 18 Ill. App. 2d 163, 173.

Here the appellate court observed that the trust instrument was executed nearly eight years before the pronouncement in *First National Bank* that spendthrift trusts are subject to reimbursement proceedings under section 5—105. The Department's claim against the trust, if successful, would have exhausted all of the trust assets, and the appellate court concluded that a reformation of the trust was therefore warranted. The result in *First National Bank*, the court said, "represents an unforeseen contingency which will result in a complete loss to the trust beneficiary and a total thwarting of the settlor's intent." 133 Ill. App. 3d 337, 342.

We are not persuaded that the circumstances here constitute the extreme case necessary for a court to "break in upon the terms of a trust" (*Stough v. Brach*

(1946), 395 Ill. 544, 549). The decision in *First National Bank* can reasonably be said to be foreseeable, as there are other instances in our common law in which a trust established for the benefit of an incompetent person was held to be vulnerable to reimbursement claims of the public agency charged with the person's care. In *Kough v. Hoehler* (1952), 413 Ill. 409, this court upheld the constitutionality of section 9—19 of the Mental Health Code, which made patients and their estates liable for the *per capita* cost of care and maintenance of the patient (Ill. Rev. Stat. 1951, ch. 91½, par. 9—19). Section 9—19 is substantially similar to section 5—105. The court found it "proper and fitting" that a patient, his estate or relatives should reimburse the State as they are able, or to statutory amount, thereby lessening the burden on the public. (*Kough v. Hoehler* (1952), 413 Ill. 409, 418.) This court has held that the income yielded by trust assets is part of a recipient's estate against which the Department may bring a claim (*Grames v. Norris* (1954), 3 Ill. 2d 112), and later rejected the contention that only the income and not the principal is subject to services charges under the Code (*Department of Public Welfare v. Foster* (1958), 13 Ill. 2d 55). The respondent contends that it has never been determined that spendthrift trusts are vulnerable to Department claims under section 5—105. It is worthy of note that courts in other jurisdictions have held that a spendthrift trust established for the benefit of an incompetent is subject to reimbursement proceedings brought under statute by public agencies. (*Bureau of Support in the Department of Mental Health & Hygiene & Correction v. Kreitzer* (1968), 16 Ohio St. 2d 147, 243 N.E.2d 83; *Estate of Lackmann v. Department of Mental Hygiene* (1958), 156 Cal. App. 2d 674, 320 P.2d 186; *In re Walters* (1924), 278 Pa. 421, 123 A. 408; *In re Hohenshieldt's Estate* (1932), 105 Pa. Super. 18, 159 A. 71.) We are aware that there are deci-

sions to the contrary (*City of Bridgeport v. Reilly* (1946), 133 Conn. 31, 47 A.2d 865; *Hoelzer v. Blum* (1983), 93 A.D.2d 570, 462 N.Y.S.2d 684; *Maul v. Fitzgerald* (1980), 78 A.D.2d 147, 432 N.Y.S.2d 282; *First National Bank v. Department of Health & Mental Hygiene* (1979), 284 Md. 720, 399 A.2d 891), but nonetheless we do not consider the result in *First National Bank* to be an unforeseen exigency sufficient to warrant reformation of the trust.

We agree with the appellate court that the settlor's intent in establishing the trust was to create a fund for her handicapped son in the event his needs exceeded the services provided by the State, and that if the trustee was ordered to reimburse the Department the trust assets would be exhausted and the intent of the settlor defeated. (133 Ill. App. 3d 337, 342.) The objective of judicial construction of a trust instrument is to ascertain the settlor's intent, which the court will carry out if it is not contrary to the law and public policy (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513; *2416 Corp. v. First National Bank* (1976), 64 Ill. 2d 364, 371). The settlor's intent is determined as of the time the trust instrument is executed. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513.) After first looking at the language of the instrument itself, a court may consider the surrounding circumstances at the time of execution to determine the settlor's intent. *Ford v. Newman* (1979), 77 Ill. 2d 335, 340; *Stowell v. Satorius* (1952), 413 Ill. 482, 493; Scott, Trusts sec. 164.1, at 1258 (3d ed. 1967).

Here paragraph 2.01 authorizes the trustee to expend as much of the trust assets "as the trustee deems necessary or advisable for the beneficiary's education (including a college or professional education), maintenance, medical care, support, general welfare and comfortable

living." It is not clear from this provision whether the settlor intended to establish a fund to provide services for Steven supplemental to the care provided by the State, or whether her intent was simply to provide for Steven's support regardless of whether or not Steven is in a public institution. The circumstances surrounding the execution of the trust instrument, however, support the conclusion that the settlor's intent was to provide that which the Department was unwilling or unable to furnish.

Sue Phillips executed the trust instrument shortly after Steven reached his 18th birthday. Yet section 5—105 states that "[n]o parent is liable under this Act for the services charges incurred by a child after such child reaches the age of majority." (Ill. Rev. Stat. 1983, ch. 91½, par. 5—105.) A "minor" under the statute is defined as a person under 18 years of age. (Ill. Rev. Stat. 1983, ch. 91½, par. 1—117.) Thus it is clear that at the time the trust instrument was executed, Steven's mother was under no legal obligation under section 5—105 to reimburse the Department for services charges, of which it may be reasonably presumed she was aware. It is also significant that the trust assets would be exhausted if the Department were to prevail in its claim against the trust.

In sum, the circumstances here are not such as would warrant reformation of the trust in order to carry out the intent of the settlor. It is sufficient that our construction of the trust preserves the settlor's intent to create a fund for Steven's education, maintenance, medical care, support, general welfare and comfortable living beyond that which the State is willing or able to provide.

For the reasons given, the judgment of the appellate court is affirmed insofar as it reversed the granting of summary judgment for the Department. The judgment of the appellate court is reversed insofar as it ordered

reformation of the trust and remanded for proceedings consistent with its opinion. The judgment of the circuit court is affirmed insofar as it denied respondent's petition for reformation of the trust. The judgment of the circuit court is reversed insofar as it denied respondent's motion for summary judgment. The cause is remanded to the circuit court of Cook County with directions to enter summary judgment in favor of the respondent.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded, with directions.*