# Illinois Official Reports

## Appellate Court

---

### *Schroeder v. Sullivan*, 2018 IL App (1st) 163210

---

| | |
|---|---|
| Appellate Court Caption | AMY G. SCHROEDER, KATHLEEN A. SULLIVAN, JUDITH M. SULLIVAN, MARY THERESE SULLIVAN, and JOHN G. SULLIVAN, Plaintiffs and Counterdefendants-Appellees, v. JOSEPH J. SULLIVAN JR., Defendant and Counterplaintiff-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-3210 |
| Filed<br>Modified upon<br>denial of rehearing | March 9, 2018<br><br>June 1, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-9801; the Hon. Mary Lane Mikva, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part; cause remanded. |
| Counsel on Appeal | Cronin & Co., Ltd., of Chicago (Thomas C. Cronin, of counsel), for appellant.<br><br>Noonan, Perillo & Thut, of Waukegan (C. Jeffrey Thut, of counsel), for appellee. |

JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.


**OPINION**

¶ 1      Plaintiffs Amy G. Schroeder, Kathleen A. Sullivan, Judith M. Sullivan, Mary Therese Sullivan, and John G. Sullivan sued defendant Joseph J. Sullivan Jr., alleging breach of a trust agreement and challenging defendant's payment of compensation to himself for administering the parties' deceased father's trust. The circuit court granted plaintiffs' motion for partial summary judgment, denied defendant's cross-motion for summary judgment, and granted defendant's motion to dismiss the remaining counts. On appeal, defendant contends that the court erred in finding that (1) the trust did not allow defendant to be compensated for his administration of the trust, (2) the parties' course of conduct did not waive strict adherence to the trust provisions, (3) defendant was not entitled to compensation under a *quantum meruit* theory, and (4) the plaintiffs' actions did not trigger the trust's *in terrorem* clause. We affirm in part, reverse in part, and remand the case for further proceedings.

¶ 2                              BACKGROUND

¶ 3      Joseph Sullivan Sr. was the settlor of the "Joseph J. Sullivan Trust Dated November 26, 1997" (Trust). He restated the Trust in its entirety twice and also amended the Trust twice. As amended, the "Trustee Succession" portion of the Trust designated defendant (Joseph) and Amy as successor cotrustees but allowed one of them to act alone if the other cotrustee either "fails or ceases to act." The section further provided that the term "trustee" meant "the trustee or trustees from time to time qualified and acting and whenever two co-trustees are acting, their decision or action must be taken together." In the case of a dispute between the cotrustees, an accountant, Samuel Diamond, would "break the tie" if he were "then willing and able to manage [the settlor's] affairs." The Trust failed to nominate any person or corporation to succeed Diamond as the tiebreaker.

¶ 4      Paragraph G in the "Administrative Provisions" article of the Trust addressed trustee compensation, providing in relevant part:

> "The trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust, and any corporate trustee shall receive compensation for its services in accordance with its schedule of fees in effect from time to time. A trustee's regular compensation shall be charged against income during my lifetime and thereafter half against income and half against principal, except that the trustee shall have full discretion at any time or times to charge a larger portion or all against income."

¶ 5      In the "Trustee Succession" article of the Trust, however, paragraph D, titled "Limitations on Trustee," stated in part:

> "Whenever a child of mine is acting as trustee hereunder, he or she shall jointly have all the powers given the trustee, except that he or she shall not participate in the exercise of *** any discretion to determine the propriety or amount of payments or distributions of

income or principal from property to himself or herself, *** and his or her co-trustee shall act in the limited capacity of exercising that *** discretion ***."

¶ 6    Article VI of the Trust, titled "*In Terrorem* Clause," stated that, if any person contested or attacked the "validity" of the Trust or the "validity of any disposition" under the Trust by filing suit, that person's share of the Trust would be revoked.

¶ 7    The settlor died on February 3, 2010, leaving his six children as beneficiaries under the Trust: Amy, Joseph, Kathleen, Judith, Mary, and John. On December 28, 2012, Joseph withdrew $175,000 from the Trust by check without informing his cotrustee, Amy. On January 3, 2013, Amy sent an e-mail to Joseph stating that his withdrawal of the funds from the Trust was "unacceptable" and demanding that the funds be returned by the following day.

¶ 8    Plaintiffs filed a two-count complaint against Joseph, seeking a declaratory judgment that Joseph improperly withdrew (1) $175,000 in compensation from the Trust and (2) an additional $40,000 reimbursement for legal fees in defending against both the complaint and an earlier lawsuit. Plaintiffs alleged that defendant's withdrawal of the funds constituted a breach of the terms of the Trust.

¶ 9    In response, Joseph filed a five-count counterclaim. The first three counterclaims alleged Amy's nonfeasance (count I) and misfeasance (count II), and forfeiture of plaintiffs' benefits pursuant to the *in terrorem* clause (count III). Joseph further sought appointment of a receiver (count IV) and compensation pursuant to the doctrine of *quantum meruit* (count V).

¶ 10    With respect to count III, Joseph alleged—in one sentence—that plaintiffs, "in this suit, as well as in the suit they earlier filed over the Trust in *Schroeder v. Sullivan* case no.[ ]2013 L 8125 Circuit Court of Cook County, violated the *In Terrorem* Clause of the Trust, and consequently, their interests in the Trust have been revoked." Joseph did not attach a copy of the complaint from this earlier lawsuit, nor did he provide any additional details regarding this allegation. The record on appeal, however, does include a copy of the lawsuit, commenced by the filing of a verified complaint to compel arbitration. The complaint alleged, in substance, that Joseph improperly withdrew $175,000 from the Trust to pay himself a trustee's fee and an additional $20,000 for "personal legal expenses," both of which cotrustee Amy objected to. The complaint further stated that, although the Trust provided for an "alternative dispute resolution mechanism," namely, that Samuel Diamond would make a final decision if Amy and Joseph did not agree, Samuel Diamond had passed away, and the Trust did not provide for a "successor arbitrator of disputes." Plaintiffs further alleged that Amy demanded arbitration on the propriety of Joseph "unilaterally" making the withdrawals, but Joseph refused to submit the matter to arbitration. The record on appeal indicates that the circuit court granted Joseph's motion to dismiss, finding that the provision granting Diamond the ability to cast a tiebreaking vote could not be construed as an agreement to arbitrate disputes between the cotrustees.

¶ 11    Plaintiffs filed a motion for partial summary judgment on both counts of their complaint and on count III of Joseph's counterclaim (concerning the *in terrorem* clause). Joseph filed a response to plaintiffs' motion combined with a cross-motion for summary judgment in his favor on plaintiffs' complaint and counts III and V (concerning *quantum meruit*) of his counterclaim.

¶ 12    Joseph's cross-motion on the *quantum meruit* issue asserted that he was entitled to the $175,000 fee because of his work in selling the settlor's "Clark & Barlow" hardware business and a building on Grand Avenue in Chicago. Joseph, however, did not file either a fee petition nor any document setting forth a detailed listing of the specific tasks he undertook and the time

spent. Instead, Joseph merely attached his own affidavit and the affidavit of his expert witness, John L. Kolleng. With respect to the sale of the building, Joseph's affidavit stated that Onni Development initially offered $8 million to purchase the building, but he secured a competing offer that "forced Onni to *** increase their offer to $9 million" before finally settling on a sales price of $8.75 million. Joseph added that, although Onni "came back with soil issues" and wanted the Trust to pay $750,000, which Amy's husband Jack and Amy wanted Joseph to agree to, Joseph "told the realtor to tell Onni that they were doing us a favor and countered with $250,000," which Onni accepted. Joseph further stated that he (1) sold the Clark & Barlow business for $125,000; (2) kept the hardware business open, which he asserted "conservatively *** saved" $240,000; (3) "[f]ought a lawsuit with Lincoln Park Zoo" that saved the estate $90,000; and (4) "appealed real-estate [*sic*] taxes," resulting in a $204,000 refund. Kolleng's affidavit opined that Joseph's claimed fee was reasonable based solely upon Kolleng's interview with Joseph and Kolleng's review of the "fee schedules for Bank of America, the Northern Trust and the Private Bank." Kolleng stated that Joseph's compensation "falls well below what a corporate Trustee would have charged in duplicating all his efforts on behalf of the estate."

¶ 13    Attached to Joseph's cross-motion was a transcript of the deposition of Brooke Peppey, the attorney who drafted the Trust. Peppey did not recall having any discussion with the settlor "as to compensation for the trustees." She also did not recall having any discussions with the settlor about "Paragraph G" of the Trust (related to trustee compensation). Nonetheless, Peppey stated that she believed that the settlor would not have objected to his son Joseph paying himself a trustee's fee. Peppey further asserted that paragraph G of the Trust entitled noncorporate trustees to "reasonable compensation." Peppey further testified that she "always" verbally told Joseph that the two cotrustees had to agree on a reasonable amount of fees to be paid to him. Joseph's cross-motion also included a transcript of his deposition, in which he admitted that, after attorney James Song recommended that Joseph "itemize [his] time" with respect to his work on the Trust, Joseph nonetheless failed to do so.

¶ 14    Joseph subsequently filed an additional exhibit containing a December 27, 2010, e-mail from Amy to Joseph and Peppey in which Amy stated that she did not say or feel that Joseph's "taking a distribution would be the 'wrong' thing to do," that Amy thought that it was "the right thing" for Joseph to do, and that Joseph "certainly deserve[d] to take it."

¶ 15    Plaintiffs then filed a combined reply in support of their summary judgment motion and response opposing Joseph's cross-motion. Plaintiffs' reply and response argued, *inter alia*, that the *quantum meruit* claim necessarily failed because (1) the Trust specifically denied the availability of fees to a noncorporate trustee, (2) Joseph failed to provide evidence to justify any fee, and (3) Joseph's administration of the Trust did not justify the specific fee he took.

¶ 16    Plaintiffs also attached an affidavit from Amy to their combined reply and response. Amy's affidavit stated that, contrary to Joseph's affidavit, the hardware store was never an asset of the Trust; rather, it passed directly to Joseph and their other brother, John. Amy added that the Trust did not receive $125,000 from the sale of the business to Studio 41. In addition, the largest asset in the Trust was a building at 353 West Grand Avenue in Chicago, and Joseph wanted his "friend and neighbor" to be the broker for the sale of the building. Amy further stated that Joseph's friend obtained an offer for $7.39 million with various contingencies, including that the property be "zoned to allow an excess of 297 residential units" and that the Trust would pay the first $1 million in environmental remediation costs. By contrast, according

to Amy's affidavit, the Trust retained CBRE Realty, which presented a $9 million purchase offer with no contingencies. The first offer was then increased to $8.4 million "plus $28,000 per unit achieved above 297 units" but with the same zoning and environmental contingencies. Amy stated that Joseph refused to agree to the $9 million offer, so she and Joseph agreed to appoint an attorney to act as arbitrator. This arbitrator determined that the $9 million offer was in the best interest of the Trust. After the Trust accepted the $9 million offer, Amy noted that environmental issues arose during the due diligence period, but her husband resolved those issues and negotiated $500,000 in savings to the Trust, whereas Joseph "had nothing to do with the environmental issues."

¶ 17 Joseph filed a reply in support of his cross-motion for summary judgment. Joseph agreed that, upon the settlor's death, the trustees were to transfer the stock in the hardware business to Joseph and his brother, John. Joseph, however, noted that the family agreed to split the proceeds from the sale of the hardware business equally. Joseph attached an unsigned copy of a "Family Settlement Agreement" indicating that John and Joseph agreed to "hold and administer the shares [of the hardware business] as part of the residue of" the Trust and then distributed the proceeds from the sale of the shares equally among all siblings.

¶ 18 At the hearing on the cross-motions for summary judgment, counsel for Joseph noted that he had submitted Amy's e-mail from December 2010 indicating that she believed that Joseph deserved compensation. Counsel conceded, however, that the e-mail had been sent "years earlier" and that her e-mail was not "a blanket approval for [Joseph's] decision to take fees."

¶ 19 Following the hearing, the circuit court granted plaintiffs' motion on two grounds. First, the court found that, although the language of the Trust allowed for all trustees to be reimbursed for expenses, only corporate trustees were permitted to receive compensation, so "by implication," the Trust prohibited defendant's claimed "fee" of $175,000. Defendant countered that the statement in the Trust that corporate trustee fees were to be determined by its schedule merely described how the fee would be calculated, whereas an individual trustee's fee only had to be "reasonable." The trial court responded:

> "THE COURT: And I honestly—I will say to you that—and I will say it on the record, for whatever it's worth. I don't think the amount is unreasonable. And I didn't even—And that's why I don't think it matters that you brought in an expert to say it. That's not really the issue. I don't think the amount is unreasonable."

¶ 20 Second, the court noted that the Trust required that all trustees agree on disbursements of Trust assets, and "there was clearly no agreement by Amy that this particular fee could be taken." The court further rejected defendant's argument that section 7 of the Trusts and Trustees Act (Act) (760 ILCS 5/7 (West 2016)) permitted noncorporate trustees to obtain fees for their services because section 3 of the Act (760 ILCS 5/3 (West 2016)) stated that the Act's provisions would only apply if they were " 'not inconsistent with the provisions of the instrument.' " The court thus found in favor of plaintiffs on both their declaratory judgment claim and their breach of trust agreement claim.

¶ 21 The court further found that the *in terrorem* clause did not apply not only because "the plaintiffs prevailed [in this case], but also because they [were] not directly or indirectly contesting or attacking the validity of the trust or any amendment thereto." The court thus denied Joseph's motion for summary judgment on count III of the counterclaim and granted plaintiffs' motion for summary judgment on that count. Although plaintiffs did not move for summary judgment on count V of the counterclaim, the court granted that relief, finding that,

because the Trust prohibited Joseph from receiving compensation, he could not seek relief under *quantum meruit*.

¶ 22    Joseph subsequently filed a motion to reconsider, which the court denied, and a motion to voluntarily dismiss the remaining counts of his counterclaim (I, II, and IV), which the court granted. This timely appeal followed.

¶ 23                                    ANALYSIS

¶ 24    On appeal, Joseph claims that the circuit court erred in finding that (1) the Trust did not allow him to pay himself compensation for his administration of the Trust, (2) the parties' course of conduct did not waive strict adherence to the Trust provisions, (3) he was not entitled to compensation under a *quantum meruit* theory, and (4) the Trust's *in terrorem* clause was never triggered.

¶ 25    Since the parties filed cross-motions for summary judgment, they conceded that no material questions of fact existed and that only a question of law was involved that the court could decide based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of cross-motions for summary judgment, however, does not establish that there is no issue of material fact nor that the trial court is obligated to render summary judgment for either party. *Id.* We review the trial court's decision as to cross-motions for summary judgment *de novo*. *Id.* ¶ 30. In addition, this case concerns the construction of a trust, which is a question of law we also review *de novo*. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 19.

¶ 26    The same rules of construction used regarding wills apply to the construction of trust agreements. *Storkan v. Ziska*, 406 Ill. 259, 263 (1950). A trust is interpreted to determine the settlor's intent, which is "paramount." *Id.* This is principally accomplished by "examining the entire trust and by giving to the words employed their plain and ordinary meaning." *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991).

¶ 27    When the language of the document is clear, the court should not modify the document or create new terms. See *Northern Trust Co. v. Tarre*, 86 Ill. 2d 441, 450 (1981). When a term is ambiguous, however, we may rely upon rules of construction to ascertain the donor's intent. *Harris Trust & Savings Bank v. Beach*, 118 Ill. 2d 1, 4 (1987). It is well established that "ambiguity can be found only if the language is reasonably or fairly susceptible to more than one interpretation." *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993). Nonetheless we should, if possible, construe a trust so that no language is treated as surplusage or rendered void or insignificant. *Id.* at 615-16. In addition, a settlor's intent should not be derived from " 'speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of the [trust document], since this would amount to making a [trust] for him and not to interpreting the [trust] he has made.' " *Bell v. Carthage College*, 103 Ill. App. 2d 289, 292 (1968) (quoting *Gridley v. Gridley*, 399 Ill. 215, 229 (1948)). We now consider Joseph's claims of error with these principles in mind.

¶ 28                              Trustee Compensation

¶ 29    Joseph first contends that the court erroneously found that the Trust prohibited noncorporate trustees from receiving compensation. He argues that both corporate and noncorporate trustees are entitled to compensation and that this "issue of fact *** was improperly decided by the trial court below." Amy argues that the plain language of the Trust

does not entitle Joseph to pay himself a fee and that, in any event, Joseph did not have cotrustee Amy's consent to pay himself a trustee fee.

¶ 30 The paragraph of the Trust regarding compensation states that a "trustee" will be reimbursed for all reasonable expenses, and that a "corporate trustee" will receive compensation for its services based upon its schedule of fees. Joseph maintains that he is entitled to compensation under the Trust because the following sentence—stating that a "trustee's regular compensation" will be charged first against Trust income and thereafter against income and principal equally—does not limit the term "trustee" with the term "corporate." Therefore, Joseph argues that any trustee (corporate or otherwise) is entitled to compensation. We agree. The sentences at issue do not *explicitly* prohibit individual, noncorporate trustees from compensation, and the general rule embodied in section 7 of the Act applies, providing in relevant part that a trustee, both corporate and noncorporate, "shall be *** entitled to reasonable compensation for services rendered." 760 ILCS 5/7 (West 2016). Accordingly, we hold that individual trustees such as Joseph may receive compensation.

¶ 31 In so holding, we rely on the plain language of the Trust, rather than Peppey's deposition testimony regarding the settlor's intent. Peppey conceded that she had no recollection of having had "any discussions" with the settlor regarding trustee compensation. It thus appears that the attorney was relying upon speculation to reveal the settlor's intent, which has long been held to be improper. See *Bell*, 103 Ill. App. 2d at 292.

¶ 32 In addition, Peppey's deposition testimony indicated that, regardless of the propriety of noncorporate trustee compensation, she "always" told Joseph that his cotrustee, Amy, had to agree to the payment. It is undisputed that Amy voiced her objection as soon as she became aware that Joseph had paid himself a $175,000 trustee fee. Although there was evidence that Amy had at one point indicated that Joseph "deserve[d]" some sort of fee for his work, Joseph's counsel freely admitted that Amy made that statement "years earlier," and the statement could not be considered a "blanket approval" for any subsequent withdrawal of any amount. We therefore reverse the trial court's order granting summary judgment on counts I and II of plaintiffs' complaint.

¶ 33 Plaintiffs' citation to *Renchen v. Renchen*, 2014 IL App (3d) 130572-U, does not require a contrary result. There, the court interpreted trust language virtually identical to that at issue here and determined that the trustee was not entitled to compensation. *Id.* ¶ 32. *Renchen* is an unpublished decision under Illinois Supreme Court Rule 23, and plaintiffs should not have cited it in their brief. See Ill. S. Ct. R. 23(e)(1) (eff. July 1, 2011) (unpublished orders are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case"). We again admonish counsel to refrain from citing unpublished Rule 23 decisions. *Renchen* is not binding on this court, and we do not find it to be persuasive.

¶ 34 That brings us to the issue of Amy's objection. Paragraph D in the "Limitations on Trustee" article of the Trust further complicates matters. That paragraph prevents a trustee who is a child of the settlor (such as Joseph) from "determin[ing] the propriety or amount of payments *** to himself" and requires the sibling cotrustee to make that determination. Amy has explicitly disagreed with Joseph's decision to pay himself a trustee fee and the amount of the fee. The Trust provides that disputes between the cotrustees were to be resolved by the settlor's accountant, Samuel Diamond, who would "break the tie." Diamond, however, is deceased, and the Trust failed to provide a successor tiebreaker. This case must therefore be

remanded to the circuit court for a determination of a reasonable trustee fee for Joseph, whether directly by the circuit court on presentation of a detailed fee petition or by appointment of a replacement tiebreaker.

¶ 35 We recognize that the parties have litigated this dispute for several years. The need for judicial economy suggests that we simply close the case by determining as a matter of law that the Trust allows Joseph to be compensated and that the $175,000 fee was appropriate. But Joseph's counterclaim never contained any count seeking a declaration of his rights under the Trust, so no motion resolving such a claim is before us.

¶ 36 Moreover, the record before us is insufficient to allow us to fix Joseph's fee. It is well established that a trustee " 'is bound to keep clear, distinct, and accurate accounts. If he does not, all presumptions are against him, and all obscurities and doubts are to be taken adversely to him.' " *In re Estate of O'Hare*, 2015 IL App (2d) 140073, ¶ 8 (quoting *Nonnast v. Northern Trust Co.*, 374 Ill. 248, 260-61 (1940)). The record before us, however, contains nothing resembling clear, distinct, and accurate accounts.

¶ 37 Joseph's affidavit contains vague assertions of having (1) settled a lawsuit with the Lincoln Park Zoo (with no information as to the nature of the underlying lawsuit or the amount of work required to reach a settlement), (2) obtained a higher price for the sale of the settlor's building (an assertion that Amy's affidavit and the record seem to dispute), (3) sold the hardware business for $125,000 (that Amy contends was not a Trust asset), (4) kept the hardware business open (but only providing a purported "conservative[ ]" estimate as to the savings to the Trust estate), and (5) successfully appealed unspecified real estate taxes (but without any detail as to the amount of time spent seeking the refund). Joseph freely admitted during his deposition that, despite being advised by counsel to do so, he did not itemize his time spent working on the Trust.

¶ 38 The affidavit of Kolleng (Joseph's expert) does not provide an independent analysis of the amount of time Joseph spent managing the Trust; rather, it relied exclusively on Joseph's statements and a general review of the fees corporate trustees have charged other estates. Notably, Kolleng's affidavit provides no independent basis for its conclusions; instead, it provides only conclusory assertions as to the amounts that Joseph's actions either saved or benefited the Trust. On these facts, we cannot hold that these are "clear, distinct, and accurate accounts." (Internal quotation marks omitted.) See *id.* The trial court's statement during the hearing on the cross-motions for summary judgment that Joseph's claimed fee was reasonable was merely, as the court itself recognized, a passing comment rather than a finding based upon a careful review of sufficient evidence. Even so, the sum of $175,000 appears eminently reasonable given the nature and complexity of Joseph's asserted services. However, without a formal fee petition and in light of the factual dispute regarding whether the services benefited the Trust, we must remand for further proceedings on this issue.

¶ 39 We next address Joseph's remaining claims in the interest of judicial economy. These issues were fully briefed in the context of plaintiffs' motion for summary judgment on counts I and II of their complaint and in this court, and they may recur on remand.

¶ 40                                                  Waiver

¶ 41 Joseph claimed, as an affirmative defense, that Amy's and his "course of conduct," namely, their use of their own separate checkbooks and the fact that "there was never a check issued which contained the signature of both [cotrustees] on it," waived strict adherence to the

Trust requirement that the cotrustees agree to all disbursements. We find that the circuit court properly found there was no such waiver.

¶ 42 Joseph states that on several occasions he "approved and directed" Amy to "take care" of their brother John, but he then asserts that Amy then made a series of withdrawals from the Trust with neither John's "prior knowledge nor consent." Joseph, however, fails to cite to anything in the record to support this assertion. Where an argument is devoid of support in the record, it is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (stating that the "Argument" section of an appellant's brief "shall contain the contentions of the appellant ***, with citation of *** the pages of the record relied on"); see also *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 651 (2007) (holding that the plaintiffs forfeited various arguments because they "fail[ed] to provide a record citation"). Moreover, waiver is "the intentional relinquishment of a known right" and may be either "made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104-05 (1991). The party asserting implied waiver must show a "clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* at 105. Joseph has failed to make the necessary showing, so we must reject his contention of error on this additional ground.

¶ 43 Joseph also cites numerous cases and statutes relating to implied waiver in the context of contract law, but the issues before us concern trust law, so his reliance upon those authorities is somewhat misplaced. It is well established that a trustee must carry out a trust "according to its terms [citation] and to act with the highest degree of fidelity and utmost good faith." *In re Estate of Halas*, 209 Ill. App. 3d 333, 344 (1991); see also Restatement (Third) of Trusts § 64(1) (2003) ("[With certain exceptions not relevant here], the trustee or beneficiaries of a trust have only such power to terminate the trust or to change its terms as is granted by the terms of the trust."). Only in "extreme" cases should a court " 'break in upon the terms of a trust.' " *Department of Mental Health & Developmental Disabilities v. Phillips*, 114 Ill. 2d 85, 91-92 (1986) (quoting *Stough v. Brach*, 395 Ill. 544, 549 (1946)). Joseph cites nothing to support his argument that a trustee can impliedly waive an express requirement in a trust. As such, his claim fails.

¶ 44                                             *Quantum Meruit*

¶ 45 Joseph also contends that the court erred in granting summary judgment in favor of plaintiffs on count V of his complaint, which sought relief under the doctrine of *quantum meruit*.[1] Relying on the premise that the Trust allows compensation for noncorporate trustees, he argues that he was entitled to equitable relief under *quantum meruit* because he "contributed substantial value to the Trust," such as lodging successful property tax appeals for certain real property held in the Trust and "achieving substantial Trust savings" with respect to the family hardware business, which he characterizes as a "centerpiece asset" of the Trust. He further observes that the court found the amount of the compensation he took ($175,000) was reasonable for the work he performed as trustee.

---

[1]Joseph does not contest the procedural issue created by the court's granting of summary judgment in favor of plaintiffs on this count despite the fact that plaintiffs had not moved for summary judgment on this count. We therefore consider this point forfeited.

¶ 46    The term "*quantum meruit*," which means "as much as he deserves," is an expression used to describe the extent of liability on a "quasi-contract," *i.e.*, a contract implied in law. (Internal quotation marks omitted.) *Archon Construction Co. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 30. A quasi-contract, or contract implied in law, is one where there is no actual agreement between the parties, but nonetheless a duty is imposed to prevent injustice. *Id.* As such, claims sounding in *quantum meruit* are predicated upon the reasonable value of the services performed. *Id.* To recover under a *quantum meruit* theory, a plaintiff must show (1) he performed a service to benefit the defendant, (2) he did not perform the service gratuitously, (3) defendant accepted the service, and (4) no contract existed to prescribe payment for the service. *Id.* ¶ 31. It is well established, however, that actions in quasi-contract, such as *quantum meruit*, are precluded when there is an express contract between the parties regarding the work that was performed. *Id.* ¶ 32 (citing *People v. Kinion*, 97 Ill. 2d 322, 332 (1983)). "Simply put, if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law." *Id.* ¶ 33.

¶ 47    Our resolution of the Trust language regarding trustee compensation renders this issue moot. Joseph's claim for compensation derives from his work as a trustee for the Trust, which covered precisely the same subject matter. As such, and irrespective of the reasonableness of the fee he took or the value his services gained for the Trust and its beneficiaries, he cannot obtain relief under *quantum meruit*. See *id.* We thus affirm the circuit court's granting of summary judgment in favor of plaintiffs on count V of the counterclaim.

¶ 48                                  The *In Terrorem* Clause

¶ 49    Finally, Joseph contends that the court erred in rejecting his argument that, under the *in terrorem* clause of the Trust, plaintiffs have forfeited any beneficial interest in the Trust because of their lawsuits against him. Joseph argues that the court erred in finding that, because plaintiffs "won" and were seeking merely to construe (rather than challenge) the Trust, the *in terrorem* clause did not apply. We disagree.

¶ 50    Although in general, conditions in a clause against contesting a will or attempting to set it aside are valid (*In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063 (1981)), "such clauses are disfavored and are strictly construed to avoid forfeiture" (*In re Estate of Mank*, 298 Ill. App. 3d 821, 826 (1998) (citing *Wojtalewicz*, 93 Ill. App. 3d at 1063)). "Illinois courts are further guided by 'the well-established rule that equity does not favor forfeitures, and in construing conditions, both precedent and subsequent, a reasonable construction must be given in favor of the beneficiary.' " *Id.* (quoting *Clark v. Bentley*, 398 Ill. 535, 540 (1947)).

¶ 51    Here, neither lawsuit challenged the validity of any Trust provision. The prior lawsuit (No. 2013 L 8125) sought to compel arbitration to determine the propriety of Joseph's withdrawals. It therefore did not seek to declare any portion of the Trust invalid; it merely sought a neutral third party to determine whether Joseph's payment to himself was proper. As to the lawsuit at issue in this case, plaintiffs' two-count complaint sought a declaratory judgment as to the terms of the Trust—namely, the trustee compensation provisions—and alleged Joseph's breach of the terms of the Trust. Here, too, plaintiffs did not seek to have the Trust (or some portion thereof) declared invalid; rather, they sought the court's approval of their proposed construction of the Trust and relief from what they suspected was a cotrustee's breach of the terms of the Trust. Because Illinois law disfavors forfeiture, we must construe the *in terrorem* clause in favor of the beneficiaries. See *id.* Accordingly, we hold that plaintiffs did not forfeit

their rights by filing either lawsuit. The court therefore did not err in granting summary judgment in favor of plaintiffs and denying summary judgment to Joseph on count III of Joseph's counterclaim. Since the *in terrorem* clause was not triggered, we need not address plaintiffs' argument that the clause violates Illinois law or public policy.[2] See *Clark*, 398 Ill. at 540 (declining to determine the validity of *in terrorem* clause because it was inapplicable).

¶ 52                                    CONCLUSION

¶ 53    We affirm the judgment of the circuit court granting summary judgment to plaintiffs on counts III and V of the counterclaim. We reverse the circuit court's order granting summary judgment to plaintiffs on plaintiffs' complaint. We affirm the order denying summary judgment to Joseph because we find there is an issue of fact precluding the granting of that motion, namely, the appropriate amount of fees to which Joseph is entitled. We remand for further proceedings to determine the amount of Joseph's fee. If Amy objects to the amount of the fee, the circuit court may resolve the dispute and/or appoint a replacement tiebreaker if necessary.

¶ 54    Affirmed in part; reversed in part; cause remanded.

---

[2]We disregard plaintiffs' citation to *In re Living Trusts of George C. Miller & Eleanor J. Miller*, 2011 IL App (2d) 100715-U, and *In re Estate of Alexander*, 2015 IL App (4th) 141096-U, because those cases are unpublished orders under Rule 23(b) and thus have no precedential value. See Ill. S. Ct. R. 23(b) (eff. July 1, 2011).