2025 IL App (4th) 241458-U

NO. 4-24-1458

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
August 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SCHUBERT'S SPEED SHOP LLC, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| JESSE A. BENTLEY, | ) | No. 22LM16 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | David M. Olson, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding defendant forfeited consideration of his appeal by failing to comply with the briefing requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020).

¶ 2    In March 2022, plaintiff, Schubert's Speed Shop LLC, filed a two-count complaint, alleging breach of contract and a claim of *quantum meruit* against defendant, Jesse A. Bentley, following defendant's refusal to pay plaintiff for a custom paint job of his airplane. In August 2024, the trial court granted judgment in favor of plaintiff on its claim of breach of an oral contract. The court awarded plaintiff damages in the amount of $21,387.83.

¶ 3    Defendant appeals *pro se*, raising the following issues: (1) the trial court erred in finding the existence of a contract, (2) the court erred by "ignoring" plaintiff's alleged violations of sections 15 and 25 of the Automotive Repair Act (Act) (815 ILCS 306/15, 25 (West 2022)), and (3) plaintiff was barred from recovery under the theory of *quantum meruit*. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        On March 22, 2022, plaintiff filed a two-count complaint against defendant. Count I sought recovery based upon breach of an oral contract. In the alternative, count II sought recovery based upon the theory of *quantum meruit*. In both counts, plaintiff requested damages in the amount of $18,110.14. Plaintiff alleged, in October 2020, defendant contacted plaintiff and sought its labor, materials, and services for the custom painting of defendant's Van's Aircraft RV-8 airplane. Plaintiff asserted Jason Schubert, the owner and manager of plaintiff, sent defendant an e-mail on October 23, 2020, stating

>        "[Defendant],
>
>        I would highly suggest that you consider taking this project to one of the shops that gave you an estimate of $12,000-$15,000. I can guarantee, you won't get the quality that you would with me but at least you would be in your price range.
>
>        I am a quality shop not an economy shop."

On October 26, 2020, defendant sent Jason an e-mail, which read, in part, "Jason, I'd like the high quality paint job. If you could send me an invoice with the hours and rates as below, I'll get you a check. If it should run more, I'll get you paid when it gets to that." Plaintiff further alleged, after the airplane was delivered to and accepted by defendant, he refused to pay the remaining balance of the contract.

¶ 6        Defendant filed a *pro se* answer to the complaint on April 18, 2022. In his answer, defendant admitted he sent plaintiff the October 26, 2020, e-mail. Defendant denied the remaining material allegations of the complaint. In the "defenses and allegations" section, defendant asserted, as to count I, there existed no contract or "meeting of the minds." (Emphasis omitted.) He further alleged the parties agreed to "an understood budgeted amount" and he was not informed when the

costs exceeded the budgeted amount. As to count II, defendant argued plaintiff had "unclean hands" (emphasis omitted) and cited section 25 of the Act (815 ILCS 306/25 (West 2022)), which requires motor vehicle repair facilities to obtain consumers' consent before performing work which exceeds the estimated price. He also maintained he inquired about the status of the budget on at least three occasions, but those requests were ignored.

¶ 7 On May 19, 2022, plaintiff filed a reply to defendant's defenses and allegations. Plaintiff denied there was an agreed "budgeted amount" and asserted it did not provide defendant a quote, as the price was based on a time-and-material basis. Plaintiff acknowledged it accepted a down payment of $25,760, which was paid directly by defendant's employer, Fire Control, Inc. Plaintiff argued the Act was not applicable in this case. Defendant filed an answer to plaintiff's reply on June 21, 2022, which essentially repeated the assertions previously set forth in defendant's answer to the complaint.

¶ 8 In May 2023, defendant filed a motion for summary judgment. Following a hearing in October 2023, the trial court entered an order denying the motion.

¶ 9 The matter proceeded to a bench trial on August 13, 2024. Defendant was not present. Plaintiff presented the following evidence at trial.

¶ 10 Jason testified plaintiff was a high-end, high-quality paint shop, which specialized in hot rods, antique classics, and restoration jobs of motor vehicles. The shop typically charged customers on a time-and-material basis.

¶ 11 In October 2020, Jason met with defendant and Ron Moring in the shop to discuss a project to custom paint defendant's airplane. At the time, the shop had completed custom paint jobs for two airplanes, and they were currently working on a third airplane. All three projects were charged on a time-and-material basis. Jason recalled defendant was looking to pay between

$15,000 and $20,000. Jason informed defendant the last paint job he completed for Moring's airplane 13 years prior cost $27,000. He did not give defendant a quote or an estimate, nor did he agree to a fixed amount for the project during the meeting.

¶ 12    After the meeting, Jason sent defendant the October 23, 2020, e-mail suggesting defendant take his airplane to another shop if he wanted to remain within his price range. Defendant responded with the October 26, 2020, e-mail stating he wanted the "high quality paint job." Defendant requested Jason send him an invoice for $25,760 and further stated, "If it should run more, I'll get you paid when it gets to that." Copies of both e-mails were admitted into evidence.

¶ 13    In November 2020, a check in the amount of $25,760 was sent to plaintiff from Fire Control, Inc. The parties continued to discuss the paint schematics until plaintiff accepted defendant's airplane into its shop in February 2021. Copies of the e-mails containing the discussions were admitted into evidence.

¶ 14    Jason testified he oversaw the project on defendant's airplane. He described the work done on the airplane, which included prepping, cleaning, masking, body work, priming, block sanding, finish sanding, painting in four colors, clear coat application, and sanding and buffing. Prior to starting the paint job, scratches and dents on the body of the airplane had to be repaired. There was also oil leaking from the fuselage, which had to be cleaned daily to ensure adhesion of the paint. Defendant tried to supply his own paint masks and cowl panel. However, he did not prep the parts properly, so the shop had to redo this work. The shop also had to strip all the body filler applied by defendant and replace it. Pictures of the oil leak, body filler, and paint masks were admitted into evidence.

¶ 15    In June 2021, plaintiff completed the project and defendant picked up the airplane.

Jason informed defendant he would send him the final invoice later. Defendant appeared "very happy with the workmanship." Copies of the employees' time sheets and materials records for the project were admitted into evidence. According to the time sheets, 424.5 hours of labor were expended on defendant's airplane at a rate of $60 per hour, totaling $25,470 for labor. According to the materials records, a total of $18,110.14, plus a $290 material handling charge, was expended on the project. Jason testified the amount reflected a fair and reasonable market value of the materials.

¶ 16      An invoice dated June 14, 2021, was sent to defendant with a balance due of $18,110.14, reflecting the credit of $25,760 for the initial payment. A copy of the invoice was admitted into evidence. Jason testified after defendant did not respond to the first invoice, a second invoice was sent. Defendant responded and asked Jason to send an invoice for $12,000 to Fire Control, Inc. Jason told defendant he was not comfortable submitting the invoice to Fire Control, Inc. He called defendant a few months later, and defendant again asked Jason to send the invoice to Fire Control, Inc. Jason again declined to send the invoice to defendant's employer.

¶ 17      Mick Schubert testified he was employed by plaintiff. Mick confirmed he performed most of the work on defendant's airplane. He estimated the airplane was around three times the size of a 1955 Chevrolet motor vehicle.

¶ 18      Following plaintiff's closing argument, the trial court found there was an express contract, granted judgment on count I in favor of plaintiff, and awarded $18,110.14 in damages, plus $409.84 in court costs and $2,867.85 in prejudgment interest, for a total of $21,387.83. The court found count II was "duplicative and unnecessary" and made a provisional ruling that "if Count I were not granted, the Court would have granted Count II for all the same reasons and the same prayers for relief."

¶ 19          In September 2024, defendant filed a motion to reconsider. The motion alleged defendant inadvertently missed the bench trial due to a bookkeeping error. Defendant asked the trial court to vacate the August 13, 2024, order and set a new trial date.

¶ 20          The trial court held a hearing on the motion to reconsider on October 8, 2024. Following the arguments of the parties, the court took the matter under advisement. The court subsequently issued a written order denying the motion.

¶ 21          This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23          As previously stated, defendant raised three issues on appeal. However, we find defendant forfeited these arguments because his brief failed to comply with our supreme court rules.

¶ 24          Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) sets forth the necessary requirements that must be met when filing an appellant's brief. We recognize defendant is appearing *pro se*. However, "[a] party's status as a *pro se* litigant *** does not relieve him of [the] obligation to comply with appellate rules." *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 14. Indeed, Illinois courts treat *pro se* litigants the same as licensed attorneys. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78 (stating a *pro se* litigant must comply with the same rules and is held to the same standard as a licensed attorney).

¶ 25          "[T]he procedural rules governing the content and form of appellate briefs are mandatory and not suggestions." *Litwin v. County of La Salle*, 2021 IL App (3d) 200410, ¶ 3. Defendant's brief on appeal fails to comply with Rule 341(h) in multiple respects. Rule 341(h)(6) mandates the "Statement of Facts" must contain "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to

- 6 -

the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Defendant's statement of facts, which is less than a page long, contains no citations to the record and fails to summarize the facts necessary for the resolution of this appeal. Among other deficiencies, he makes no mention of the complaint or the counts contained therein, and his summary of the testimony at the bench trial consists of a single sentence.

¶ 26        Rule 341(h)(7) requires the "Argument" section of the brief to include "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020). Points not argued in the appellant's brief are forfeited and cannot be raised in the reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020). An appellant also forfeits any contention not supported by legal argument or citation to relevant authority. See *Hollenbeck v. City of Tuscola*, 2017 IL App (4th) 160266, ¶ 27. "Appellate courts are not depositories where litigants may dump the burden of argument and research," and this court is "entitled to have the issues clearly defined and a cohesive legal argument presented." *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82.

¶ 27        In his first argument, defendant asserts the trial court erred in finding the existence of a contract. Defendant sets forth no cogent explanation as to why the court erred in finding the existence of a contract. His entire argument, which lacks any citation to the record or legal authority, consists of the bare assertion that "there exists no written or verbal evidence of a contract or meeting of the minds establishing agreement of Appellant to pay whatever sum claimed by Appellee at the end of the project." Defendant has thus forfeited his first argument.

¶ 28        Defendant's second argument is the trial court erred by "ignoring" plaintiff's alleged violations of sections 15 and 25 of the Act (815 ILCS 306/15, 25 (West 2022)), which require motor vehicle repair facilities to provide consumers with written estimated prices for labor

and parts and to obtain consumers' consent before performing work which exceeds the estimated price. Defendant again does not include any citations to the record, and aside from his conclusory statement that the Act applies in this case, he provides no further citations to legal authority. Further, he does not explain how the Act is applicable in this case, where the work performed by plaintiff was on defendant's airplane and not his motor vehicle. See 815 ILCS 306/5 (West 2022) (The legislative purpose of the Act is to enhance "the safety and reliability of *motor vehicles* serviced by motor vehicle repair facilities in the State of Illinois." (Emphasis added.)). "Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal." (Internal quotation marks omitted.) *Hollenbeck*, 2017 IL App (4th) 160266, ¶ 27. Defendant attempts to expand on this argument in his reply brief, raising assertions which were not included in his opening brief and with no accompanying citations to authority to support his assertions. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief."). As such, we must conclude defendant forfeited his second argument.

¶ 29　　　　Defendant's third argument is the trial court erred in finding in favor of plaintiff on count II pursuant to the "unclean hands doctrine." In rendering its oral pronouncement following the bench trial, the court stated, "[I]f Count I were not granted, the Court would have granted Count II for all the same reasons," and later entered a provisional order stating as such. We find this issue is moot, as the court entered judgment in favor of plaintiff only on count I, based on its finding an express contract existed between the parties. See *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 46 (precluding actions in quasi-contract, such as *quantum meruit*, when there is an express contract between the parties). Even if we were to find this issue was not moot, defendant has forfeited this argument by failing to comply with Rule 341(h)(7). His argument is a mere quarter

of a page in length and entirely fails to cite the record or any legal authority.

¶ 30                                   III. CONCLUSION

¶ 31          For the reasons stated, we affirm the trial court's judgment.

¶ 32          Affirmed.